IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE: YRC WORLDWIDE, INC.       )
ERISA LITIGATION,              )     Case No. 09-2593-JWL
_____)

## MEMORANDUM AND ORDER

Plaintiffs, four former employees of YRC Worldwide, Inc. ("YRCW" or "the Company") who participated in YRCW's retirement savings plan, bring this putative class action against YRCW and various directors and employees under the federal Employee Retirement Income Security Act (ERISA). The matter is presently before the Court on defendants' motion to dismiss or, alternatively, for summary judgment (Doc. # 75). For the reasons set forth below, the motion is **granted in part and denied in part**. The motion is granted with respect to plaintiffs' claim in Count I that defendants breached their fiduciary duties by failing to disclose information to plan participants; plaintiffs may amend their complaint as it relates to that claim, however, on or before **November 12, 2010**. The motion is denied in all other respects.

### I.    Plaintiffs' Allegations

The four plaintiffs were participants in, and bring this action under ERISA on behalf of, the YRC Worldwide Inc. Retirement Savings Plan (including four predecessor plans that merged effective December 31, 2008) (collectively, "the Plan"). Plaintiffs assert claims under ERISA against YRCW; its Benefits Administrative Committee (the

administrator and named fiduciary of the Plan); and 21 of its employees, comprised of the CEO, nine other members of the board of directors (four of whom were members of the Board's Compensation Committee), and 11 members of the Benefits Administrative Committee.  Plaintiffs assert class action claims for the period from October 25, 2007, to the present.

In Count I of the consolidated complaint, plaintiffs allege that all defendants other than the directors breached their fiduciary duty under ERISA § 404(a), 29 U.S.C. § 1104(a), to act with prudence with respect to the Plan, by permitting the Plan to include the Company's own stock as an investment option for participants.  Plaintiffs also allege as a part of Count I that those defendants breached their fiduciary duty by failing to disclose information to participants in the Plan regarding investment in the Company. Plaintiffs seek restoration to the Plan of amounts lost because of the Plan's investment in Company stock.  In Count II, plaintiffs allege that defendants acted under a conflict of interest, in violation of their duty under ERISA.  In Count III, plaintiffs allege that YRCW and the director defendants are liable for failing to monitor other fiduciaries with respect to the Plan's investment in Company stock.  Finally, in Count IV, plaintiffs allege that all defendants are liable as co-fiduciaries for the breaches by other fiduciaries.

## II.     <u>Count I – Imprudence</u>

### A.     <u>*Pleading Standards*</u>

Defendants seek dismissal of the complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  The Court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do.  *See Bell Atlantic*, 550 U.S. at 555.  The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).  Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555.  The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B.     <u>*Settlor Function*</u>

As noted above, plaintiffs assert in Count I that the non-director defendants imprudently allowed the Plan to offer a Company stock fund as an investment option for

3

participants.  Defendants argue that because the Plan required that the investment options include a fund invested primarily in the Company's stock, plaintiffs are essentially alleging that defendants should have effected an amendment of the Plan to remove that requirement.[1]  Because amendment of an ERISA plan is a settlor function and not a fiduciary act, defendants argue that plaintiffs cannot assert a claim for breach of fiduciary duty under ERISA.  *See, e.g.*, *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1219 (D. Kan. 2004) (Lungstrum, J.) (dismissing imprudence claim to the extent it alleged that defendants should have amended plan documents requiring that investment options include stock of the employer) (citing, *inter alia*, *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995), and *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996)).

Plaintiffs respond that they have not asserted any claim that defendants should have amended the Plan.  Rather, plaintiffs argue that, under ERISA's prudence requirement, defendants should have overridden the Plan's terms and refused to offer the Company stock fund as an investment option when investment in that fund became imprudent.  Defendants argue, on the other hand, that they were bound by the Plan's terms, and that therefore they cannot be liable under ERISA for failing to disregard those terms.  *See, e.g.*, *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *6-13 (S.D.N.Y.

---

[1]Although plaintiffs dispute this characterization of the Company stock fund as mandatory, the Plan and most of the predecessor plans did require that a Company stock fund be offered as an investment option; only the predecessor Regional Transportation Plan spoke of such an option in permissive terms.

Aug. 31, 2009) (defendants had no duty to override plan's requirement of investment in employer stock).

The Tenth Circuit has already rejected this argument for dismissal. *See Eaves v. Penn*, 587 F.2d 453 (10th Cir. 1978). In *Eaves*, the defendant trustee of an Employee Stock Ownership Plan (ESOP) argued that he was bound by the terms of the plan to invest in employer securities unless compliance was impossible, illegal, or directly inconsistent with a specific prohibition of ERISA, and that otherwise he should be deemed to have met ERISA's "prudent man" requirement. *See id.* at 459. The defendant relied on the fact that ERISA permits and contains special provisions for ESOPs. *See id.* The Tenth Circuit cited the language and legislative history of the statute in rejecting that argument, holding as follows:

> While an ESOP fiduciary may be released from certain per se violations on investments in employer securities under the provisions of §§ 406 and 407 of ERISA, the structure of the Act itself requires that in making an investment decision of whether or not a plan's assets should be invested in employers securities, an ESOP fiduciary, just as fiduciaries of other plans, is governed by the "solely in the interest" and "prudence" tests of §§ 404(a)(1)(A) and (B).

*Id.*[2] Thus, the Tenth Circuit permits a claim of imprudence based on investment in

---

[2]The Plan in this case was an Eligible Individual Account Plan (EIAP). An ESOP is one of several types of pension plans categorized under ERISA as EIAPs. *See* 29 U.S.C. § 1107(d)(3)(A). Because a purpose of EAIPs is to promote investment in employer securities, they are subject to many of the same exceptions in ERISA that apply to ESOPs. *See Edgar v. Avaya, Inc.*, 503 F.3d 340, 347 (3d Cir. 2007). Defendants do not seek to distinguish *Eaves* on this basis, and there is no reason that the Tenth Circuit's reasoning in *Eaves* should not apply to all cases involving EIAPs.

employer securities even if such investment is required by the terms of the plan, and the Court will not dismiss plaintiffs' claim on this basis.

### C.   *Diversification Exemption*

Defendants also seek dismissal of plaintiffs' prudence claim based on ERISA's exemption of EIAPs from its diversification requirement. *See* 29 U.S.C. § 1104(a)(2). Defendants argue that plaintiffs' Count I is tantamount to a claim that defendants should have diversified the Plan's holdings by investing in securities other than the Company's stock, which claim would be precluded by the exemption. In response to this argument, plaintiffs insist that they have not asserted a diversification claim, based on the particular allocation of the investments of the Plan or a fund; rather, they claim that defendants breached their fiduciary duty simply by offering the Company stock fund as an investment option.

The Court agrees with plaintiffs and is persuaded that such a claim may be distinct from a diversification claim. The Ninth Circuit recently recognized this same distinction. *See Quan v. Computer Sciences Corp.*, __ F.3d __, 2010 WL 3784702, at *6 (9th Cir. Sept. 30, 2010). Moreover, in *Eaves*, the Tenth Circuit specifically referred to and quoted this exemption from the diversification requirement, while nevertheless holding that the defendant was subject to the prudence requirement with respect to his plan's investment in company stock. *See Eaves*, 587 F.2d at 459. Thus, the Court is persuaded that the Tenth Circuit would not dismiss plaintiffs' claim on the basis of the diversification exemption for EIAPs, and the Court rejects this argument accordingly.

6

D.      *Application of the* Moench *Presumption*

Defendants next argue that plaintiffs have failed to plead a plausible prudence claim in this case.  In so arguing, defendants contend that, if the Court does not dismiss plaintiffs' claim because of the mandate of the Plan's terms, it should at least apply the *Moench* presumption and review their actions under a deferential abuse-of-discretion standard.

This presumption was first formulated by the Third Circuit in *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995).  In *Moench*, the court considered the purpose of ERISA and the nature of ESOPs, and it held as follows:

> [A]n ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision.  However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities.
>
>        In attempting to rebut the presumption, the plaintiff may introduce evidence that "owing to circumstances not known to the settlor and not anticipated by him [the making of such investment] would defeat the purposes of the trust."  Restatement (Second) § 227 comment g.  As in all trust cases, in reviewing the fiduciary's actions, the court must be governed by the intent behind the trust—in other words, the plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settlor's expectations of how a prudent trustee would operate.  In determining whether the plaintiff has overcome the presumption, the courts must recognize that if the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face liability for that caution, particularly if the employer's securities thrive.

*Id.* at 571-72 (footnote omitted) (brackets in original).  The Third Circuit has confirmed

that the *Moench* presumption applies to all EIAPs.  *See Edgar v. Avaya, Inc.*, 503 F.3d 340, 347-48 (3d Cir. 2007).[3]  The presumption and its abuse-of-discretion standard has been adopted by the Fifth, Sixth, and Ninth Circuits.  *See Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 254-56 (5th Cir. 2008); *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995); *Quan*, 2010 WL 3784702, at *5-8.  No federal appellate court has rejected the presumption on its merits.  *See Quan*, 2010 WL 3784702, at *5.

Only a month ago in *Quan*, in a comprehensive and sound opinion, the Ninth Circuit chose to adopt and apply the *Moench* presumption.  The court concluded that "[t]he presumption is consistent with the statutory language of ERISA and the trust principles by which ERISA is interpreted, whether the plan is an ESOP or other EIAP," and that "if properly forumulated, the *Moench* presumption can strike the appropriate balance between the employee ownership purpose of ESOPs and other EIAPs, and ERISA's goal of ensuring proper management of such plans."  *Id.* at *7.  The court reasoned further:

> We adopt the *Moench* presumption because it provides a substantial shield to fiduciaries when plan terms require or encourage the fiduciary to invest primarily in employer stock.  Fiduciaries are not expected to predict the future of the company stock's performance; without the *Moench* presumption, a fiduciary "could be sued for not selling if he adhered to the plan [and the company stock dropped], but also sued for deviating from the plan [and selling] if the stock rebounded."  *Kirschbaum*, 526 F.3d at

---

[3]In *Edgar*, the Third Circuit also rejected the argument that the *Moench* presumption should not be applied at the motion-to-dismiss stage.  *See Edgar*, 503 F.3d at 349.  For that reason and because of the standards set forth by the Supreme Court in *Twombly*, the Court rejects the same argument made by plaintiffs in this case.

8

256.  Moreover, the "long-term horizon of retirement investing" requires protecting fiduciaries from pressure to divest when the company's stock drops.  *Id.* at 254.  The *Moench* presumption should also make it less likely that a plan fiduciary would be tempted to use insider information to divest the plan from company stock, since continued investment in the plan will be presumed prudent.

*Id.* (brackets in original).

The Court finds the Ninth Circuit's reasoning to be persuasive, and it concludes that the Tenth Circuit would similarly adopt the *Moench* presumption—at least in the present case, in which the terms of the Plan (and most of the predecessor plans) required a Company stock investment option.  The Court agrees with the Ninth Circuit that in such cases, applying the presumption of prudence provides the proper balance between ERISA's recognition of the benefits of investment in employer stock and its prudence requirement.  Moreover, in a similar case, the Tenth Circuit stressed that a "highly deferential" standard should be used to review a fiduciary's actions.  *See Ershick v. United Mo. Bank of Kan. City, N.A.*, 948 F.2d 660, 666 (10th Cir. 1991).  A deferential standard is also consistent with the Supreme Court's adoption of a deferential standard of review, based on an analysis of trust law, to review  discretionary decisions by fiduciaries in the context of claims asserting the denial of benefits.  *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989); *see also Moench*, 62 F.3d at 564-65 (noting *Firestone* in formulating presumption).

The issue thus becomes whether plaintiffs have pleaded sufficient facts in this case to overcome the presumption of prudence.  In considering that question, the Court

9

looks to the opinions of the various federal appellate courts for guidance.  In *Moench*,

for example, the Third Circuit concluded that the presumption could possibly be rebutted

by the following argument by the plaintiff:

> that the precipitous decline in the price of Statewide stock, as well as the Committee's knowledge of its impending collapse and its members' own conflicted status, changed circumstances to such an extent that the Committee properly could effectuate the purposes of the trust only by deviating from the trust's direction or by contracting out investment decisions to an impartial outsider.

*Moench*, 62 F.3d at 572.  In *Edgar*, a later case, the Third Circuit noted that in *Moench*,

the plaintiff had proffered evidence of a stock price drop from $18.25 to less than $0.25

per share, the directors' knowledge of regulators' concerns about the company's

financial condition and regulatory violations, and the fact that the company ultimately

filed for bankruptcy.  *See Edgar*, 503 F.3d at 348 (citing *Moench*, 62 F.3d at 557).  In

*Edgar*, the plaintiffs alleged a greater-than-represented cost of a corporate acquisition,

a small reduction in earnings, disruptions in sales, and a dramatic reduction in product

demand, all of which indicated corporate developments that would likely have a negative

impact on earnings and the value of the company's stock.  *See id.*  The court concluded,

however, that those developments and the corresponding drop in stock price ($2.68 per

share) did not create "the type of dire situation" present in *Moench* that would have

required the defendants to disobey the plan terms and refuse to offer the company stock

as an investment option.  *See id.*

   The Fifth Circuit also distinguished *Moench* on its facts in *Kirschbaum*, in which

it held that the plaintiffs had not rebutted the presumption.  *See* 526 F.3d at 255.  The

court stated:

> In contrast to the company-wide failure evidenced in *Moench*, here
> Kirschbaum has alleged round-trip trading by a few employees and an
> initial drop in REI's stock value of approximately forty percent.  There is
> no indication that REI's viability as a going concern was ever threatened,
> nor that REI's stock was in danger of becoming essentially worthless.
> This is a far cry from the downward spiral in *Moench*, and much less grave
> than facts other courts routinely conclude are insufficient to rebut the
> *Moench* presumption.

*Id.* (footnote omitted).  The court then cited cases in which a 75 or 80 percent drop in

stock price had been insufficient to overcome the presumption.  *See id.* at 255 n.12.  The

court further stated:

> We do not hold that the *Moench* presumption applies only in the
> case of investments in stock of a company that is about to collapse.  The
> presumption, however, is a substantial shield.  As *Moench* states, it may
> only be rebutted if unforeseen circumstances would defeat or substantially
> impair the accomplishment of the trust's purposes.  *Moench*, 62 F.3d at
> 571.  One cannot say that whenever plan fiduciaries are aware of
> circumstances that may impair the value of company stock, they have a
> fiduciary duty to depart from ESOP or EIAP plan provisions.  Instead,
> there ought to be persuasive and analytically rigorous facts demonstrating
> that reasonable fiduciaries would have considered themselves bound to
> divest.  Less than rigorous application of the *Moench* presumption
> threatens its essential purpose.  A fiduciary cannot be placed in the
> untenable position of having to predict the future of the company's stock
> performance.  In such a case, he could be sued for not selling if he adhered
> to the plan, but also sued for deviating from the plan if the stock
> rebounded.

*Id.* at 256.

In *Quan*, the Ninth Circuit examined in some detail this question of "[h]ow bad

do things have to be before no reasonable fiduciary in similar circumstances would have

continued investing in company stock."  *Quan*, 2010 WL 3784702, at *8.  The court stated:

> To overcome the presumption of prudent investment, plaintiffs must therefore make allegations that clearly implicate the company's viability as an ongoing concern or show a precipitous decline in the employer's stock combined with evidence that the company is on the brink of collapse or is undergoing serious mismanagement.  It will not be enough for plaintiffs to prove that the company's stock was not a "prudent" investment or that defendants ignored a decline in stock price.  Plan participants can only rebut the *Moench* presumption by showing publicly known facts that would trigger the kind of careful and impartial investigation by a reasonable fiduciary that the plan's fiduciary failed to perform.

*Id.* (internal quotations and footnote omitted).  The court noted that "[t]here is no bright-line rule as to how much evidence is needed to rebut the *Moench* presumption," but it stated that a "guiding principle" is that as the strength of the plan's requirement of investment in employer stock increases, so does the difficulty in rebutting the presumption.  *Id.* at *9.  In *Quan*, the Ninth Circuit held that the plaintiffs did not rebut the presumption with their assertion of problems with the company's stock option program and its tax accounting, as well as a 12-percent one-day stock price drop.  *See id.* at *9-11.  The court concluded that the plaintiffs had produced no evidence (in opposing summary judgment) that it was unreasonable for the fiduciaries to believe that the company would overcome its problems, and it further noted that the stock price rebounded shortly after the one-day drop.  *See id.* at *9-10.

Thus, in the present case, the Court reviews plaintiffs' complaint for facts indicating a sufficiently dire financial situation, such that a reasonable fiduciary would

necessarily conclude that the settlor had not foreseen such circumstances in requiring investment in the Company's stock, and that continuing to offer such stock as an investment option would undermine the purpose of the Plan to provide retirement benefits.  The Court agrees with the appellate courts cited above that plaintiffs' hurdle is a high one, particularly in light of the Plan's requirement that a Company stock fund be offered as an option.  Nevertheless, the Court concludes that plaintiffs have alleged sufficient facts in their consolidated complaint to rebut the *Moench* presumption at this stage of the litigation.

For instance, plaintiffs have not merely alleged a substantial decrease in the Company stock price; rather, plaintiffs allege that the stock became practically worthless. Plaintiffs allege a stock price of $25.96 per share in October 2007, at the beginning of the putative class period, with an eventual decrease to $0.45 per share in March 2010, with a risk that the stock would be delisted from the stock exchange, thereby "effectively making the security untradeable and potentially worthless."  Moreover, plaintiffs allege that in November 2009, the Company initiated a debt-for-equity exchange program intended to create one billion new shares, thereby diluting the value of existing shareholders' shares by 95 percent.  Thus, plaintiffs' allegations go far beyond the substantial stock price drops (75 to 80 percent) found insufficient in other cases. Allowing the Plan's holdings of Company stock to become essentially worthless could certainly defeat the purpose of the Plan, such that a reasonable fiduciary would be justified in overriding the Plan's mandate to offer such stock as an investment option.

Moreover, plaintiffs' allegations are not limited to those involving the value of the stock.  Plaintiffs also allege that earnings and income decreased substantially throughout the relevant period, including an $899 million loss for 2009; that the Company's debt-to-equity ratio increased from 2.53 to 33.89; that the Company's credit ratings plummeted to junk status; that analysts predicted bankruptcy and concluded that the Company was not likely to rebound; and that the Company's likelihood of bankruptcy under a particular analytical measuring tool (the Altman Z-Score) steadily decreased, indicating a significant probability of bankruptcy.  Plaintiffs also noted various setbacks incurred by the Company including the following: in a very bad economy, the Company suffered decreases in demand and losses of volume in its transportation business; the Company closed service centers; it had to borrow significantly to pay down notes; it had to collateralize assets because of significant downgrades in its credit; it had to grant a 15 percent ownership stake to its union employees in exchange for a reduction in wages; it cut 2,000 jobs; and it was forced to collateralize real estate to make pension contribution payments.  Although the Company did not seek bankruptcy protection, plaintiffs allege that it essentially effected an "out-of-court bankruptcy" through the restructuring whereby it exchanged debt for equity.

These allegations in conjunction with the calamitous decrease in share value—even without specific allegations of mismanagement by the Company's officers—show a dire financial situation, endangering the viability of the Company itself.  Thus, the present case is more akin to *Moench* than to the cases that sought to

14

distinguish *Moench*.  This case—at least, as alleged by plaintiffs—does involve "the type of dire situation" missing in *Edgar*, the threat to the viability of the employer as a going concern and the "downward spiral" missing in *Kirschbaum*.  As required by the *Quan* court, plaintiffs have put forth allegations "that clearly implicate the company's viability as an ongoing concern or show a precipitous decline in the employer's stock combined with evidence that the company is on the brink of collapse."  Plaintiffs' ultimate burden of proof may be high, and defendants may seek to test plaintiffs' ability to overcome the presumption at the summary judgment stage.  At this stage, however, the Court concludes that plaintiffs have alleged sufficient facts to state a prudence claim against the non-director defendants, and the Court therefore denies this portion of defendants' motion to dismiss.[4]

### III.   Count I – Failure to Disclose Information

Although it is unclear in plaintiffs' consolidated complaint, plaintiffs purport to have asserted a claim in Count I that the non-director defendants also breached their fiduciary duties by failing to disclose information relevant to investment in the Company stock fund.  In seeking dismissal of any such claim, defendants first argue that plaintiffs have not alleged any fiduciary acts by defendants, as the only disclosures referenced in

_____

[4]The Court rejects defendants' argument that, even if plaintiffs do allege sufficient facts, those facts are not sufficient to establish liability from October 2007, at the beginning of the putative class period.  The Court will reserve such questions of the proper commencement date for class certification proceedings.

the complaint were made by the CEO and in securities filings, which disclosures were therefore made solely in a corporate (non-fiduciary) capacity. *See, e.g.*, *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000) (persons are fiduciaries for liability under ERISA only to the extent of and with respect to acts as a fiduciary, that is, while performing a fiduciary function).

This Court has previously rejected this argument as applied to SEC filings that have been incorporated by reference into plan documents. *See Sprint ERISA Litig.*, 388 F. Supp. 2d at 1226 (citing cases). Plaintiffs note that there is such incorporation here. Accordingly, the Court rejects this basis for dismissal urged by defendants.

The Court does agree with defendants, however, that plaintiffs have failed to allege facts sufficient to support a non-disclosure claim under the Supreme Court's *Twombly* standard. Plaintiffs' complaint quotes many disclosures by the Company and its officers, and it contains general allegations that the disclosures were misleading, that there was negative information about the Company, that the Company was at risk, and that the Company did not disclose its true financial health. Plaintiffs have not identified any actual misrepresentations by defendants, however. Nor have plaintiffs indicated specifically how any particular disclosure was misleading. Plaintiffs have not alleged specifically the information known by defendants that should have been disclosed.

Thus, plaintiffs have only alleged a failure to disclose in vague, conclusory terms, without providing proper notice to defendants of their specific claim. Such pleading does not pass muster under *Twombly*, and this claim is therefore subject to dismissal.

16

Nevertheless, the Court will grant plaintiffs an opportunity to amend their complaint to cure this deficiency.  If plaintiffs believe that they can state a proper non-disclosure claim, they may file their amended complaint on or before November 12, 2010.  If no such amended complaint is filed, this claim shall be dismissed.[5]

Defendants also argue that plaintiffs have not alleged a plausible non-disclosure claim in light of the many disclosures actually made, as shown in the complaint.  The Court will reserve any such inquiry, however, until after plaintiffs have had the opportunity to amend, so that the argument may be considered in the context of plaintiffs' actual allegations of non-disclosure.

Defendants also argue that plaintiffs' non-disclosure claim is deficient because plaintiffs have not alleged any detrimental reliance by Plan participants.  Plaintiffs dispute that they must show reliance as a part of this claim.  The cases on which plaintiffs rely, however, do not support their position, but instead suggest that reliance must indeed be shown in this type of case.  *See, e.g.*, *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 353 (N.D. Ill. 2007) (class certification is not precluded by the presence of the individualized question of reliance); *In re Marsh ERISA Litig.*, 2006 WL 3706169, at *7 (S.D.N.Y. Dec. 14, 2006) (fact that reliance must be shown does not mean that

---

[5]Defendants also argue that plaintiffs failed to comply with the particularity requirement of Fed. R. Civ. P. 9(b) in pleading this claim.  Because defendants raised this argument only in their reply brief, the Court will not consider it.  *See Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003).  In re-pleading, however, plaintiffs are on notice of defendants' position that Rule 9(b) applies in this situation.

misrepresentation claim has not been brought on behalf of the plan); *Rankin v. Rots*, 220 F.R.D. 511, 522-23 (E.D. Mich. 2004) (individual issue of reliance does not predominate such that class certification would be inappropriate).  The Court agrees that, as plaintiffs have alleged a failure to disclose information to Plan participants, plaintiffs will be required to show some reliance by participants, such that the alleged failures actually caused the loss alleged.

Plaintiffs contend that reliance may be presumed in this context.  Defendants dispute that reliance may be presumed.  *See, e.g.*, *Harris v. Amgen, Inc.*, 2010 WL 744123, at *13 (C.D. Cal. 2010) (plaintiffs did not provide sufficient authority that reliance is presumed in an ERISA breach of fiduciary duty case).  As noted by plaintiffs, however, the Supreme Court has permitted reliance to be presumed in alleging a failure to disclose in the securities fraud context, *see Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972), and some courts have applied that holding also in the ERISA failure-to-disclose context.  *See Nauman v. Abbott Labs.*, 2007 WL 1052478, at *2 (N.D. Ill. Apr. 3, 2007); *In re Tyco Int'l, Ltd.*, 2006 WL 2349338, at *6 (D.N.H. Aug. 15, 2006).  Defendants have not offered any reasons why the Tenth Circuit would not also apply *Affiliated Ute* in an ERISA case; in fact, defendants did not address that case at all in its reply brief.  Accordingly, at this stage of the litigation, the Court rejects defendants' argument that reliance may not be presumed.

The fact remains that plaintiffs have not made any reference to reliance whatsoever in their complaint.  Accordingly, if they choose to re-plead a non-disclosure

claim, plaintiffs must also allege reliance (whether actual or presumed).  *See In re First American Corp. ERISA Litig.*, 2008 WL 5666637, at *7 (C.D. Cal. July 14, 2008) (cited by plaintiffs) ("where a plaintiff pleads nondisclosure by a fiduciary, the plan participants adequately plead reliance by alleging that they are presumed to have relied on that lack of information").

## IV.   <u>Count II – Conflict of Interest</u>

Defendants also seek dismissal of Count II, arguing that plaintiffs have failed to plead a plausible claim the defendants acted under a conflict of interest in allowing the Company stock fund to remain an investment option under the Plan.  Defendants point to the Supreme Court's statements that an ERISA fiduciary may wear multiple hats and have financial interests adverse to beneficiaries, and that they may take actions to the disadvantage of certain employee beneficiaries while acting as employer or even plan sponsor.  *See Pegram*, 530 U.S. at 225.  The Supreme Court also made clear in *Pegram*, however, that the fiduciary with two hats must wear only the fiduciary hat when making a fiduciary decision.  *See id.*

In this claim, plaintiffs allege that certain defendants received Company stock as part of their compensation, which created a conflict between their own interests and the interest of Plan participants with respect to that stock.  Defendants argue that plaintiffs have not alleged a plausible conflict because the interests of such defendants would be aligned with that of the participants, with both sets of shareholders seeking a higher

19

stock value.  Plaintiffs respond, however, that defendants would benefit from an inflated stock price, while participants, who hold the stock as a long-term retirement fund, would prefer an uninflated stock.  The Court agrees that this theory of divergent interests is sufficiently plausible to support a conflict-of-interest claim at this stage.  Accordingly, the Court denies defendants' motion to dismiss Count II.

### V.      Counts III and IV – Duty to Monitor and Co-Fiduciary Liability

In Count III of their complaint, plaintiffs allege that the Company and its directors breached their fiduciary duty by failing to monitor the administration of the Plan.  In Count IV, plaintiffs seek to impose co-fiduciary liability on all defendants for breaches by any fiduciaries.  Defendants seek to dismiss both claims, arguing that plaintiffs have not alleged facts sufficient to show that any defendants had notice or knowledge of any breaches by their appointees or other fiduciaries.

The Court rejects this argument for dismissal.  Plaintiffs have alleged that defendants breached their duty to monitor their appointees' acts in administering the Plan in specific ways.  Plaintiffs have also alleged that defendants had knowledge of breaches by other defendants.  When considered in conjunction with plaintiffs' factual allegations supporting its underlying prudence claim, these allegations are sufficient to state cognizable claims for breach of the duty to monitor and co-fiduciary liability.

20

Accordingly, the Court denies defendants' motion to dismiss these claims.[6]

## VI.    Director Defendants

Defendants next seek dismissal of all claims against the director defendants. Defendants argue that plaintiffs have not alleged facts to show that the directors participated in any fiduciary decision to maintain the Company stock fund as an investment option under the Plan, that plaintiffs have alleged only that the directors appointed the committee that in turn appointed the committee that administered the Plan, and the plaintiffs have not alleged that those appointments by the directors were deficient.

The Court rejects this argument. Plaintiffs have not asserted Count I—by which they assert their prudence and non-disclosure claims—against the director defendants. Thus, the fact that plaintiffs may not have alleged direct participation by the directors in the investment decision is of no moment. Moreover, defendants have mischaracterized plaintiffs' allegations, as plaintiffs have clearly alleged that the directors directly appointed some members of the administrative committee and that some directors were part of the group that appointed the remaining members of that committee. Thus, the directors did have direct oversight (including through the appointment power) of the

_____

[6]In light of its refusal to dismiss the underlying prudence claim asserted by plaintiffs in Count I, the Court also rejects defendants' argument that Counts III and IV should be dismissed as derivative claims that cannot stand alone.

fiduciaries administering the Plan, and there is no basis to dismiss Counts II, III, and IV as asserted against the director defendants.

## VII.   Summary Judgment – Releases

In the alternative, defendants seek summary judgment on plaintiffs' claims, for two reasons.  First, defendants cite the releases signed by the four individual plaintiffs, for which they were compensated as part of their separation from employment.  Plaintiffs respond that they released only individual claims in those documents, and that the releases therefore do not affect their present claims asserted on behalf of the Plan. Defendants concede that plaintiffs have asserted the present claims on behalf of the Plan and that plaintiffs could not have released the Plan's claims; defendants argue nonetheless—without citation to supporting authority—that the releases bar these four individuals from asserting the Plan's claims in this action.

The Court rejects this argument by defendants.  As recently noted by the Third Circuit, "[t]he vast majority of courts have concluded that an individual release has no effect on an individual's ability to bring a claim on behalf of an ERISA plan under § 502(a)(2)."  *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 594-95 (3d Cir. 2009) (citing cases).  The Court concludes that the Tenth Circuit would follow that majority rule.

Moreover, in the present case, defendants concede that the Plan's claims have not been released; thus, the fact that the individual plaintiffs have released their own claims,

which are not at issue here, is irrelevant.  The documents signed by plaintiffs (which defendants have provided to the Court) did not bar plaintiffs' participation in the present suit; to the contrary, the releases specifically contemplated that plaintiffs "may participate directly or indirectly in any action that is allowed by law" against defendants. The documents also provided that plaintiffs did not waive any rights to pension benefits. Accordingly, the Court denies defendants' motion for summary judgment on this basis.

### VIII.  Summary Judgment – Section 404(c)

Finally, defendants seek summary judgment on the basis of their affirmative defense under ERISA Section 404(c), 29 U.S.C. § 1104(c).  That safe harbor provision states that if a participant exercises control over the assets in his individual account as permitted by his plan (as determined under regulations by the Department of Labor), a fiduciary shall not be liable for any loss or by reason of any breach resulting from the participant's exercise of control.   Relying on Plan documents and an affidavit, defendants assert that participants did control their accounts under the Plan (which allowed them to move any contributions made to the Company stock fund to a variety of other funds), and that they have satisfied the requirements of the applicable regulation by the Department of Labor.

Plaintiffs argue that defendants' satisfaction of the safe harbor requirements presents a question of fact precluding summary judgment at this early stage, particularly

with respect to whether defendants disclosed all material information.  Plaintiffs have failed to submit any evidence creating such a fact issue, however.  The Court agrees with defendants that ordinarily plaintiffs would be required to controvert defendants' evidence in order to withstand summary judgment, even at this stage of the litigation.  Plaintiff could also have provided an affidavit, pursuant to Fed. R. Civ. P. 56(f), showing that they could not present facts essential to justify their opposition to summary judgment, but plaintiffs have not done so.

Nevertheless, the Court agrees with plaintiffs that defendants have failed to comply with D. Kan. Rule 56.1, which requires a numbered statement of material facts as to which no genuine issue exists.  Defendants have not disputed their noncompliance or even addressed the local rule in their reply brief.  Therefore, the Court declines to entertain this argument for summary judgment at this time, and defendants' motion is denied.[7]  Defendants are not precluded from attempting to obtain summary judgment on this basis by means of a proper motion, in accordance with the applicable procedure, after the time has run for plaintiffs' amended complaint.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion to dismiss or, alternatively, for summary judgment (Doc. # 75) is **granted in part and denied in part**.  The motion is granted with respect to plaintiffs' claim in Count I that

---

[7]In light of this ruling, the Court does not address plaintiffs' argument that the defense set forth in Section 404(c) does not apply to their claims.

defendants breached their fiduciary duty by failing to disclose information to plan participants; plaintiffs may amend their complaint as it relates to that claim on or before **November 12, 2010**.  The motion is denied in all other respects.

      IT IS SO ORDERED.

      Dated this 29th day of October, 2010, in Kansas City, Kansas.

                         s/ John W. Lungstrum

                         _____

                         John W. Lungstrum
                         United States District Judge