## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF KANSAS

**In Re: YRC Worldwide, Inc.**                    **Case No. 09-2593-JWL**
**ERISA Litigation**

### MEMORANDUM & ORDER

Plaintiffs, former employees of YRC Worldwide, Inc. (YRCW) who participated in the YRC Worldwide, Inc. Retirement Savings Plan (the Plan[1]), bring this putative class action lawsuit for breach of fiduciary duty under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132. Plaintiffs allege that defendants–including YRCW; the individual members of the Benefits Administrative Committee; and YRCW's Board of Directors–breached their fiduciary obligations with respect to the Plan by continuing to offer as an investment option a fund invested primarily in the Company's own stock, by permitting the Plan to continue to invest contributions in the Company stock fund and by permitting the fund to invest in Company stock when they knew or should have known that the Company stock fund was an imprudent investment for retirement savings.

Plaintiffs also assert claims that are derivative of their prudence claims, including a claim that defendants did not loyally serve Plan participants by taking steps to avoid a conflict of interest such as engaging independent fiduciaries who could independently assess the Plan's investments in the Company stock fund, divesting the Plan of company stock and discontinuing further investments in company stock; a claim that YRCW and the director defendants failed to

_____

[1]The Plan includes four predecessor plans that merged effective December 31, 2008.

monitor the performance of the Benefits Administrative Committee members; and a claim for co-fiduciary liability.

Plaintiffs seek to represent a class of individuals who were participants in or beneficiaries of the Plan and this matter is presently before the court on plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23. Specifically, plaintiffs move the court to certify the following class under Rule 23:

> All persons, excluding Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time between October 25, 2007 and the present (the "Class Period") and whose Plan accounts included investments in YRCW common stock (directly and/or through shares in the YRCW Company Stock Fund.

As explained below, the court grants the motion.

## I.    Standard

In determining whether to certify a class action, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Shook v. El Paso County*, 386 F.3d 963, 971 (10th Cir. 2004) ("*Shook I*") (quotations omitted). A district court may certify a class if the proposed class satisfies the requirements of Rule 23(a) and the requirements of one of the types of classes in Rule 23(b). *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010). The party seeking class certification bears the burden of proving that the requirements of Rule 23 are satisfied. *Shook I*, 386 F.3d at 968. In deciding whether these requirements have been satisfied, "the district court must accept the substantive allegations of the complaint as true, though it need

not blindly rely on conclusory allegations of the complaint which parrot Rule 23 and may consider the legal and factual issues presented by plaintiff's complaints." *Devaughn*, 594 F.3d at 1194 (quoting *Shook I*, 386 F.3d at 968) (additional quotations omitted). While the court should not pass judgment on the merits of the case at the class certification stage, it must conduct its own "rigorous analysis" to ensure Rule 23's requirements are met. *Id.* (citations and quotations omitted).

## II.     Background

Consistent with the relevant standard, the following substantive allegations are taken from the complaint as supplemented by undisputed evidence submitted by the parties in connection with plaintiffs' motion. Plaintiffs were participants in, and bring this action under ERISA on behalf of, the YRC Worldwide Inc. Retirement Savings Plan (including four predecessor plans that merged effective December 31, 2008) (collectively, "the Plan"). Plaintiffs assert claims under ERISA against YRCW; its Benefits Administrative Committee (the administrator and named fiduciary of the Plan); and 21 of its employees, comprised of the CEO, nine other members of the board of directors (four of whom were members of the Board's Compensation Committee), and 11 members of the Benefits Administrative Committee. Plaintiffs assert class action claims for the period from October 25, 2007 to the present.

The Plan is a defined contribution individual account retirement plan. Eligible employees participate in the Plan by making pre-tax (or, in some circumstances, post-tax) contributions to one or more investment options. Throughout the Class Period, YRCW made matching

contributions to the Plan, matching one-half of an employee's pre-tax contributions up to six percent of a participant's annual compensation. During the proposed Class Period, the Plan provided participants with various investment options, one of which was (as mandated by the text of the Plan) a company stock fund designed to invest primarily in YRCW stock. The YRCW Stock Fund was one of 27 investment options available to participants during the Class Period and, during part of that period, one-half of YRCW's matching contributions was in the form of YRCW stock. Participants were permitted to transfer any or all of the matching contributions out of the YRCW Stock Fund and into another investment at any time. At no time during the class period were participants permitted to direct any of their own contributions to the YRCW Stock Fund or permitted to transfer balances into the YRCW Stock Fund. Beginning in October 2008, YRCW "froze" the YRCW Stock Fund, barring all future contributions to the Fund. Since that time, YRCW matching contributions have been made in cash.

Plaintiffs' claims arise out of the Plan's continuing investment in YRCW stock after it was prudent to do so. According to plaintiffs, the Plan's continued investment was imprudent because YRCW was an excessively risky investment for retirement assets in light of the Company's dire financial condition, which included deteriorating demand for trucking services; significant difficulties in securing credit facilities; excessive increases in its debt-to-equity ratio; credit rating downgrades; and skyrocketing default risk. Plaintiffs allege that defendants, in light of this excessive risk, breached their fiduciary obligations with respect to the Plan by continuing to offer the YRCW Stock Fund as an investment option, by permitting the Plan to continue to invest contributions in the YRCW Stock Fund and by permitting the fund to invest in YRCW

4

stock when they knew or should have known that the Company stock fund was an imprudent investment for retirement savings.

## III.    Rule 23(a) Requirements[2]

Rule 23(a) requires numerosity of class members, commonality of at least one question of fact or law among the class, typicality of named plaintiffs' claims or defenses to the class's claims or defenses, and adequacy of the named plaintiffs and their attorneys as class representatives. *Devaughn*, 594 F.3d at 1194 (citing Fed. R. Civ. P. 23(a)(1)-(4)). As will be explained, the court concludes that plaintiffs have satisfied each of Rule 23(a)'s requirements.

### A.    *Numerosity*

Rule 23(a)(1) requires that a class be so "numerous that joinder of all its members is impracticable." Fed. R. Civ. P. 23(a)(1). According to plaintiffs, there were nearly 17,000 participants in or beneficiaries of the Plan during 2008. More specifically, defendants' evidence

---

[2]In their submissions, the parties analyze only whether plaintiffs' prudence claim is appropriate for class certification without analyzing plaintiffs' duty to monitor, conflict of interest or co-fiduciary liability claims, presumably because these claims are derivative of plaintiffs' prudence claim such that the analysis is the same. *See In re Nortel Networks Corp. ERISA Litigation*, 2009 WL 3294827, at *8 n.2 (M.D. Tenn. 2009) (noting that certification analysis of plaintiffs' derivative claims, including duty to monitor and duty of loyalty, would mirror certification analysis of the prudence claim); *see also In re RadioShack Corp. ERISA Litigation*, 547 F. Supp. 2d 606, 616 (N.D. Tex. 2008) (claims for failure to monitor, co-fiduciary liability and conflict of interest are derivative of plaintiffs' prudence and misrepresentation claims); *Bunch v. W.R. Grace & Co.*, 532 F. Supp. 2d 283, 292 (D. Mass. 2008) (duty to monitor and co-fiduciary liability claims are derivative of prudence claim).

reflects that, at the start of the proposed class period, there were more than 15,000 participants in the Plan whose Plan accounts included investments in the Company stock fund. Defendants do not dispute that plaintiffs have satisfied the numerosity requirement of Rule 23(a) and the court finds that the proposed class meets this requirement.

B.      *Commonality*

A finding of commonality under Rule 23(a)(2) requires "only a single question of law or fact common to the entire class." *Devaughn*, 594 F.3d at 1195. According to plaintiffs, the members of the proposed class share multiple common issues, including whether defendants breached their fiduciary duties to the Plan by imprudently offering the Company stock fund as an investment option. Presented with analogous allegations, numerous courts have found that the commonality requirement of Rule 23(a)(2) is satisfied. *See, e.g., Spano v. The Boeing Co.*, ___ F.3d ___, 2011 WL 183974, at *10 (7th Cir. Jan. 21, 2011) (commonality requirement satisfied based on assertion that Boeing failed to satisfy its fiduciary duties in its selection of investment options); *In re Schering-Plough Corp. ERISA Litigation*, 589 F.3d 585, 597 (3d Cir. 2009) (commonality satisfied where there were many common issues, including whether defendants breached their duties to the Plan by continuing to invest in company stock and continuing to offer the company stock fund); *Shanehchian v. Macy's, Inc.*, 2011 WL 883659, at *3 (S.D. Ohio Mar. 11, 2011) (commonality requirement is "easily satisfied" in ERISA cases and finding requirement satisfied by common issues concerning defendants' management of Plan assets, including offering company stock as investment option); *Moore v. Comcast Corp.*, 268

F.R.D. 530, 535 (E.D. Pa. 2010) (plaintiff established common issues under Rule 23(a), including whether defendants breached their fiduciary duties by allowing the Plan to invest in the Company stock fund); *In re Delphi Corp. Sec. Lit*., 248 F.R.D. 483, 494 (E. D. Mich. 2008) (common question of whether defendants violated ERISA by imprudently offering and maintaining investment in company stock as an investment option satisfied Rule 23(a)(2)); *Brieger v. Tellabs, Inc*., 245 F.R.D. 345, 349 (N.D. Ill. 2007) (common question of whether defendants violated ERISA by imprudently managing Plan funds and continuing to invest in Company stock satisfied commonality requirement).

Defendants do not dispute that plaintiffs have identified common issues for purposes of Rule 23(a)(2).  But defendants, in tandem with their specific arguments against typicality, contend that commonality generally cannot be established in this case in light of "atypical" and individualized considerations inherent in the context of this particular case.  While some courts analyze commonality and typicality together, recognizing that the two requirements "tend to merge," *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982), the Tenth Circuit continues to treat these requirements as distinct elements, each requiring independent analysis. *See, e.g., Devaughn*, 594 F.3d at 1198-99.  The court, then, finds that the putative class meets the commonality requirement of Rule 23(a)(2) and will address defendants' arguments concerning individualized considerations in connection with the typicality requirement.

C.     *Typicality*

Rule 23(a)(3) requires the claims of the named plaintiffs to be typical of the claims of the

7

class they seek to represent. *Id.* at 1198. Importantly, the interests and claims of the named plaintiffs and class members "need not be identical to satisfy typicality." *Id.* (citation omitted). "Provided the claims of [the named plaintiffs] and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *Id.* (citation omitted).

As with the commonality requirement, numerous courts in analogous contexts have found that typicality was satisfied. *Macy's*, 2011 WL 883659, at \*6 (typicality satisfied because claims brought on behalf of the Plans for alleged breaches of fiduciary duties to the Plans); *Taylor v. ANB Bancshares, Inc.*, 2010 WL 4627841, at \*6-10 (W.D. Ark. Oct. 18, 2010); *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 103 (D. Mass. 2010); *In re Marsh ERISA Litigation*, 265 F.R.D. 128, 143 (S.D.N.Y. 2010) (plaintiffs' claims for defendants' breach of their duties to the Plan and to all Plan participants whose accounts held company stock are typical of the class's claims); *Nortel Networks*, 2009 WL 3294827, at \*6-8; *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 187 (W.D. Mo. 2009); *In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation*, 2009 WL 331426, at \*9 (D.N.J. Feb. 10, 2009) (claims of class representatives are typical of the proposed class; their prudence claims rely on the same theory, that defendants breached their fiduciary duties with regard to investment in company stock during the class period); *Brieger*, 245 F.R.D. at 350 (typicality satisfied because plaintiffs' claims seek relief on behalf of the Plan).

Nonetheless, defendants contend that plaintiffs in this case cannot establish typicality for two reasons. First, defendants distinguish this case from the litany of cases referenced above on

the grounds that those cases contained allegations that the defendants had made misleading statements or failed to disclose material information that caused participants to invest in the company's stock and that "in cases where (as here) full disclosure is made, prudence depends on the individual investment choices, strategies, and decisions of each participant in the Plan." Second, defendants contend that their assertion of a defense under ERISA § 404(c) requires an individualized analysis of causation with respect to each Plan participant such that the claims of the named plaintiffs are not typical of the claims of the class members. The court addresses (and rejects) these contentions in turn.

1.    Full Disclosure

While defendants make much of the fact that plaintiffs in this case do not assert a nondisclosure or misrepresentation claim, they direct the court to no case supporting their sweeping statement that "in cases where (as here) full disclosure is made, prudence depends on the individual investment choices, strategies, and decisions of each participant in the Plan." Moreover, the court's independent research has uncovered no authority for the idea that a meaningful distinction exists between those ERISA cases alleging both prudence claims and communications claims (*i.e.*, claims alleging material nondisclosures or misrepresentations) and those cases alleging solely prudence claims. Indeed, courts presented with both prudence claims and communications claims consistently treat those claims as entirely distinct such that the alleged misrepresentations or nondisclosures appear to have no bearing whatsoever on the prudence claims. *See, e.g.*, *In re Nortel Networks Corp. ERISA Litigation*, 2009 WL 3294827

(M.D. Tenn. Sept. 2, 2009); *In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation,* 2009 WL 331426 (D.N.J. Feb. 10, 2009) (denying class certification on communications claim because adjudication of that claim requires individualized determinations but granting class certification on prudence claims).

In any event, defendants' argument that plaintiffs' prudence claims, in the absence of misrepresentations or nondisclosures, turn on each participant's individual investment decisions inappropriately focuses on the "final step" of the defined contribution plan (the participant's allocation decisions) rather than the "common background" against which plan participants operate from the outset.  *See Spano v. The Boeing Co.*, ___ F.3d ___, 2011 WL 183974, at \*10 (7th Cir. Jan. 21, 2011).  That common background includes the investment options available to plan participants.  In light of this common background, "there might be plan losses in a defined-contribution setting, and at least some of those losses might be of the type that do not vary from participant to participant."  *Id*.  And losses that allegedly stem from a defendant's failure to satisfy its fiduciary obligations in its offering of investment options are losses that would "operate across the plan."  *See id.*  Those losses, then, do not necessarily turn on whether the defendant, in connection with its offering of investment options, has made material misrepresentations or failed to disclose material facts about those options.  The court, then, rejects defendants' argument that class certification is inappropriate in the absence of allegations that defendants made misrepresentations or material nondisclosures concerning the investment in company stock.

10

2.      Section 404(c)

Defendants further assert that certification in this case is inappropriate because an application of ERISA § 404(c)–an affirmative defense asserted by defendants in this case–requires individualized factual determinations concerning causation.  Section 404(c) provides a defense to a breach of fiduciary duty claim if the loss caused by the breach resulted from a participant's exercise of control. *See In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585, 603-04 (3d Cir. 2009).  According to defendants, the § 404(c) defense implicates individualized issues regarding each participant's investment decisions such that plaintiffs' claims are not typical of the class they seek to represent.

Defendants' argument is based solely on the Fifth Circuit's decision in *Langbecker v. Elec. Data Sys.*, 476 F.3d 299 (5th Cir. 2007).  But as defendants acknowledge, *Langbecker* does not stand for the proposition that assertion of a § 404(c) defense necessarily defeats typicality or otherwise bars certification under Rule 23.  The Fifth Circuit merely cautioned, in the specific context of that case, that the availability of a § 404(c) defense "should have some bearing on class certification." *Brieger*, 245 F.R.D. at 353 (summarizing *Langbecker*).  Indeed, it appears that every district court to have addressed this issue since *Langbecker* has held that the assertion of a § 404(c) defense does not defeat typicality (or otherwise bar certification), in large part because the defense is not unique to the claims of certain plaintiffs or class members but presumably would apply to all Plan participants. *See, e.g.*, *Macy's*, 2011 WL 883659, at *5-6; *Taylor*, 2010 WL 4627841, at *9-10 (certifying class despite § 404(c) defense where "[i]t is clearly defendants' position in this case that they bear no responsibility for the Plan losses at

issue in light of the control Plan participants exercised over the investment of their accounts in ANB Sstock."); *Nortel Networks*, 2009 WL 3294827, at *9-10 (finding typicality despite assertion of § 404(c) defense because that defense would apply to members of the class); *In re First American Corp. ERISA Litigation*, 258 F.R.D. 610, 618-19 (C.D. Cal. 2009); *Merck & Co.*, 2009 WL 331426, *12-13 (litigation of the § 404(c) defense "is well-suited to treatment on a class-wide basis"); *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 170-71 (E.D. Pa. 2009) (404(c) does not defeat certification because, if applicable, it would work to defeat the claims of the class as a whole); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 109-10 (N.D. Cal. 2008) (§ 404(c) defense is not an appropriate basis to deny class certification); *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 349-50 (N.D. Ill. 2008) (rejecting argument that § 404(c) defense defeats typicality).

In this case, defendants do not suggest that the § 404(c) defense would apply to plaintiffs but not other members of the class. In other words, defendants do not dispute that the defense applies, if at all, on a class-wide basis. In such circumstances, adjudication of the defense in a class action setting is entirely appropriate. The court, then, joins what appears to be every other court that has addressed this issue and concludes that defendants' assertion of a § 404(c) defense does not defeat typicality or otherwise bar certification of the proposed class.

### D.    *Fair and Adequate Representation of the Class*

Rule 23(a)(4) "demands that 'the representative parties will fairly and adequately protect the interests of the class.'" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th

Cir. 2002) (quoting Fed. R. Civ. P. 23(a)(4)). Legal adequacy turns on the resolution of two questions–whether the named plaintiffs and their counsel have any conflicts of interest with other class members; and whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Id.* at 1187-88 (citations and quotations omitted).

Aside from their arguments that this case is replete with "atypical" and individualized considerations rendering class certification inappropriate (arguments which the court addressed and rejected in connection with the typicality requirement), defendants do not otherwise specifically contend that the named plaintiffs will not fairly and adequately protect the interests of the class as a whole. To be sure, defendants do not contend that the named plaintiffs lack knowledge about or commitment to the case and do not contest that the named plaintiffs and their counsel will prosecute this action vigorously on behalf of the class. The court finds that this aspect of the Rule 23(a)(4) inquiry is satisfied.[3] Indeed, plaintiffs' counsel have pursued discovery, have successfully opposed in large part defendants' motion to dismiss and have prepared both this certification motion as well as a motion to strike affirmative defenses. *See Nortel Networks*, 2009 WL 3294827, at *10 (vigorous prosecution prong of Rule 23(a)(4) inquiry satisfied in similar circumstances).

_____

[3]Neither do defendants challenge the related inquiry under Rule 23(g) concerning the appointment of class counsel and, more specifically, plaintiffs' request that the court appoint their counsel, Barroway Topaz Kessler Meltzer & Check, LLP and Izard Nobel LLP, as Co-Lead Class Counsel and appoint Dysart Taylor Lay Cotter & McMonigle P.C. as Liaison Class Counsel for the class. After reviewing the respective resumes of these firms, and bearing in mind both the specific criteria set forth in Rule 23(g) and the work performed by these firms in this litigation so far, the court is satisfied that these firms will adequately represent the interests of the class.

With respect to potential conflicts, defendants' brief may be read to suggest (by way of a citation to *Langbecker* in the opening portion of their argument) that the variations in the named plaintiffs' investment decisions might hinder a named plaintiff's ability to represent the class adequately. As aptly summarized by the district court in *Brieger*, the Fifth Circuit in *Langbecker*

> cautioned that the date on which a breach of fiduciary duty is determined to have taken place carries implications not only for "dividing the pie at recovery," but also for discovery and trial strategy: "The facts, once known, may bear out different legitimate theories as to when the [company-stock fund] became an imprudent investment." Under this scenario, the need for class counsel to decide among these theories could pit the interests of some class members against others.

*Brieger*, 245 F.R.D. at 356 (quoting *Langbecker*, 476 F.3d at 315)*; accord Spano*, ___ F.3d at ___; 2011 WL 183974, at *15 (in a defined-contribution case, there "is a greater potential for intra-class conflict" if, for example, a "fund that turns out to be an imprudent investment over a particular time for one participant may be a fine investment for another participant who invests in the same fund over a slightly different period."). Other than the citation to *Langbecker*, and a parenthetical indicating that a district court needs to consider "stumbling blocks to adequacy," defendants do not make the specific argument considered by the court in *Brieger*. Nonetheless, the court will certainly monitor any potential conflicts that may arise as this case moves forward and, if necessary, will consider the need to certify subclasses of plan participants whose interests could conflict. *See Brieger*, 245 F.R.D. at 356; *Nortel Networks*, 2009 WL 3294827, at *10-12 (potential conflicts inherent in ERISA stock-drop cases arising out of multiple "optimal breach dates" are insufficient to overcome plaintiffs' showing of adequacy; court would monitor

14

conflicts and consider need for subclasses).

At this stage, however, the named plaintiffs' interests are clearly aligned with those of the other class members–they all seek recovery to the Plan and are advancing the same prudence claims based on defendants' alleged conduct with respect to the Plan. Plaintiffs have demonstrated adequacy of representation. *See Nortel Networks*, 2009 WL 3294827, at *12 (Rule 23(a)(4) satisfied in context of breach of fiduciary duty claim stemming from allegations that defendants continued to offer company stock as an option in the Plan); *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 191 (W.D. Mo. 2009) (in suit alleging that plan fiduciaries breached their duties to plan by offering employer's common stock as investment option, plaintiff established adequacy of representation in light of common interest in establishing that defendants are liable to the Plan); *In re First American Corp. ERISA Litigation*, 263 F.R.D. 549, 557-58 (C.D. Cal. 2009) (in case alleging failure to prudently manage plan's investment in employer's common stock fund, plaintiffs established adequacy of representation; rejecting asserted "optimal prudence date" conflicts as bar to adequacy); *Brieger*, 245 F.R.D. at 355-56 (same).

## IV.    Rule 23(b) Requirements

Having concluded that the proposed class satisfied the requirements of Rule 23(a), the court turns its attention to whether the proposed class satisfies the requirements of one of the types of classes described in Rule 23(b). Plaintiffs assert that certification in this case is appropriate under Rule 23(b)(1)(B) and, alternatively, under Rule 23(b)(1)(A) or Rule 23(b)(2). As will be explained, the court concludes that certification is appropriate under Rule 23(b)(1)(B)

15

but, if faced with the issue, would not certify the proposed class under rule 23(b)(1) or Rule 23(b)(2).

A.    *Rule 23(b)(1)(B)*

Pursuant to Rule 23(b)(1)(B), a class action may be maintained if prosecuting separate actions by individual class members "would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B).  In essence, then, Rule 23(b)(1)(B) considers whether "individual cases would, as a practical matter, be dispositive of the claims of nonparties." *Spano v. The Boeing Co.*, ___ F.3d ___, 2011 WL 183974, at *2 (7th Cir. Jan. 21, 2011).

In support of their motion for certification under Rule 23(b)(1)(B), plaintiffs highlight that many courts have certified under Rule 23(b)(1)(B) actions alleging similar claims.  Indeed, as the Third Circuit has recognized, "[i]n  light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule [23(b)(1)(B)] class." *In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585, 604 (3d Cir. 2009).  In that case, the Circuit noted that the plaintiff's "proofs regarding defendants' conduct will, as a practical matter, significantly impact the claims of other Plan participants and of employees who invested in the Stock Fund." *See id.* As summarized by the Third Circuit, "[g]iven that it is an ERISA § 502(a)(2) claim brought on

16

behalf of the Plan and alleging breaches of fiduciary duty on the part of defendants that will, if true, be the same with respect to every class member, Rule 23(b)(1)(B) is clearly satisfied." *See id.* at 604-05.

In addition, district courts have routinely looked to Rule 23(b)(1)(B) in certifying § 502(a)(2) claims brought on behalf of a plan for breach of fiduciary duties for continuing to offer company stock as an investment option. These courts consistently reason that certification is appropriate on the grounds that such claims seek plan-wide relief such that a failure to certify could leave future plaintiffs without relief. *See, e.g., Harris v. Koenig*, 271 F.R.D. 383, 394-95 (D.D.C. 2010) (an adjudication as to the Plan will impact a participant's individual account); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 144 (S.D.N.Y. 2010) (where allegations implicate misconduct in the management of the plan as a whole, disparate lawsuits by individual participants would raise the specter of varying adjudications); *Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 105 & n.12 (D. Mass. 2010); *In re Nortel Networks Corp. ERISA Litig.*, No. 03-MD-01537, 2009 WL 3294827, at *14 (M.D. Tenn. Sept. 2, 2009) (any single ruling about whether defendants breached their fiduciary duty to the Plan would substantially affect the interests of other class members); *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 173-74 (E.D. Pa. 2009); *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 193 (W.D. Mo. 2009); *In re Merck & Co. Sec., Derivative & ERISA Litigation*, 2009 WL 331426, at *10 (D.N.J. Feb. 10, 2009); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111-12 (N.D. Cal. 2008); *George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 352 (N.D. Ill. 2008) (because the adjudication of claims would involve recovery and distribution of Plan assets rather than individual accounts, separate

actions would impair the ability of other participants to protect their interests) (citing *Brieger v. Tellabs, Inc*., 245 F.R.D. 345, 357 (N.D. Ill. 2007)).

Faced with this clear weight of authority, defendants do not dispute that the vast majority of courts faced with similar claims conclude that certification is appropriate under Rule 23(b)(1)(B). Nonetheless, defendants oppose certification under Rule 23(b)(1)(B), turning to the Supreme Court's decision in *LaRue v. DeWolff, Boberg & Associates, Inc*., 552 U.S. 248 (2008). In *LaRue*, a single-plaintiff case brought on an individual basis, the plaintiff was a participant in a defined-contribution plan "who alleged that the plan's fiduciaries had failed to carry out his directions to make certain changes to the investments in his individual account." *Spano*, ___ F.3d at ___, 2011 WL 183974, at *4. "That failure, LaRue asserted, depleted his interest in the plan by approximately $150,000 and amounted to a breach of fiduciary duty. As relief, he sought an order requiring the fiduciaries to restore the $150,000 to the plan's assets that were designated for his account." *Id.* Overruling both the district court and the appellate court (both had reasoned that any relief would be personal to him rather than on behalf of the plan as a whole), the Supreme Court held that in the context of a defined contribution plan "in which there are individual accounts holding assets for each participant, malfeasance by a plan fiduciary that adversely affect the value of the assets held in such an account will support a suit [under section 502(a)(2)] regardless of whether the wrongdoing affects one account or all accounts in the plan." *Smith v. Medical Benefit Administrators Group, Inc*., ___ F.3d ___, 2011 WL 913085, at *5 (7th Cir. Mar. 15, 2011). After *LaRue*, then, plan beneficiaries "are entitled to resort to section 502(a)(2) after a breach of fiduciary duty reduces the value of plan assets in

their defined-contribution accounts." *Spano*, ___ F.3d at ___, 2011 WL 183974, at *6.

According to defendants, *LaRue* calls into question "the appropriateness of a Rule 23(b)(1)(B) class action in a case involving § 502(a)(2) claims." Simply put, defendants contend that *LaRue* requires that this court deny certification under Rule 23(b)(1)(B).[4] In support of that argument, defendants direct the court to one case, *In re First American Corp. ERISA Litigation*, 258 F.R.D. 610, 622 (C.D. Cal. 2009), in which a district court concluded that *LaRue* "cures any concern that the potential class members' claims would essentially be disposed of by this litigation." According to the court in *First American*, "[b]ecause the putative class members have an individual remedy [after *LaRue*], they can pursue relief on their own behalf." *Id*. In denying certification on that basis, the First American court was persuaded by the opinion of another judge in the same district, *In re Computer Sciences Corp. ERISA Litigation*, 2008 WL 7527874, at * (C.D. Cal. Sept. 2, 2008). That opinion, however, offers no more analysis than the *First American* opinion and, like *First American*, denied certification based on *LaRue* in roughly three sentences.

At least two courts have expressly rejected the *First American* opinion and have found that certification under Rule 23(b)(1)(B) is proper in the wake of *LaRue*. In *Hochstadt v. Boston Scientific Corp*., 708 F. Supp. 2d 95, 105 & n.12 (D. Mass. 2010), the district court found *First American* "unpersuasive" and, instead, looked to the district court's opinion in *Stanford v.*

---

[4]Defendants further contend that, after *LaRue*, the court cannot simply assume that plaintiffs' claims, as alleged, are brought on behalf of the plan as a whole and that, in fact, plaintiffs' claims here are inherently individual claims. As should be clear by now, the court is convinced that plaintiffs are bringing claims on the behalf of the Plan.

*Foamex L.P.*, 263 F.R.D. 156, 173 (E.D. Pa. 2009), that "the availability of an individual account claim under § 502(a)(2) does not alleviate the concerns cited by the numerous courts that have certified ERISA class actions pursuant to Rule 23(b)(1)(B) in situations where claims on behalf of the Plan are identical to those on behalf of an individual account." In *Hochstadt*, then, the district court found that Rule 23(b)(1)(B) was "clearly satisfied" because the claims were brought on behalf of the Plan and, if the alleged breaches of fiduciary duty were true, those breaches existed with respect to every class member. *Id.* at 105-06.

Similarly, the district court in *Harris v. Koenig*, 271 F.R.D. 383, 394-95 (D.D.C. 2010) rejected the *First American* approach and concluded that certification under Rule 23(b)(1)(B) was still appropriate post-*LaRue*. The *Harris* court began its analysis by identifying a host of district courts that, post-*LaRue*, continued to find Rule 23(b)(1)(B) certification appropriate in the § 502(a)(2) context. *See id.* at 395 (citing *George v. Kraft*, 270 F.R.D. 355 (N.D. Ill. 2010); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 144 (S.D.N.Y. 2010); *Stanford*, 263 F.R.D. at 173-74; *Hochstadt*, 708 F. Supp. 2d at 105 n.12; *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 109 (N.D. Cal. 2008); *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 190 (W.D. Mo. 2009); *Hans v. Tharaldson*, 2010 WL 1856267 (D.N.D. May 7, 2010)). In ultimately concluding that "*LaRue* did not eliminate the risk that the putative class members' interests and rights in this action will be disposed of if separate litigation on the same subject matter is permitted," the *Harris* court found the following excerpt from the *Stanford* opinion particularly persuasive:

> [B]ecause Stanford challenges behavior of defendants that allegedly injured the entire Fund, Stanford's claims would be identical to any individual account claim that another putative class member may raise. Indeed, . . . a participant's

20

individual account is still a part of the Plan, and, therefore, an adjudication as to the Plan will likewise impact a participant's individual accounts. Thus, the availability of an individual account claim under § 502(a)(2) does not alleviate the concerns cited by the numerous courts that have certified ERISA class actions pursuant to Rule 23(b)(1)(B) in situations where claims on behalf of the Plan are identical to those on behalf of an individual account.

*Id*. (quoting *Stanford*, 263 F.R.D. at 174).

In *Kanawi v. Bechtel Corporation*, the district court, while not specifically addressing the *First American* decision, also persuasively rejected the argument made by defendants here:

> Defendants urge that *LaRue* brought into question the propriety of class certification in § 502(a)(2) cases. Under their analysis, a class action alleging a breach of fiduciary duty cannot be sustained in the individual plan context because the loss caused to each account would be specific to that person's investment strategy. Defendants' argument reads too much into the *LaRue* analysis. Before *LaRue*, recovery under ERISA § 502(a)(2) was recognized to be on behalf of a plan–individuals could not recover for their own losses. *See [Massachusetts Mut. Life Ins. Co. v.] Russell*, 473 U.S. 134, 105 S. Ct. 3085, 87 L. Ed. 2d 96 [(1985)]. *LaRue* did not overrule that widely-accepted tenet of ERISA law. Recognizing that defined contribution plans had become more prevalent, *LaRue* simply expanded the relief available under § 502(a)(2), so that recovery can now be had when a participant demonstrates that fiduciary misconduct affected his individual account. *Id*. at 1025-26; *see also Bendaoud v. Hodgson*, 578 F. Supp. 2d 257, 2008 WL 4335884 (D. Mass. 2008) ("Of course, a fiduciary's breaches can affect more than one defined contribution plan participant. In that situation, though, the proper approach is joinder of the affected participants or the certification of a class.").

254 F.R.D. at 109; *accord In re Nortel Networks Corp. ERISA Litigation*, 2009 WL 3294827, at *8 (M.D. Tenn. Sept. 2, 2009) (*LaRue* did not disturb the notion that an ERISA § 502(a)(2) claim is brought in a representative capacity on behalf of the plan."). More recently, the Seventh Circuit touched on the idea that *LaRue* somehow forecloses class certification in § 502(a)(2) actions. *See Spano v. The Boeing Co.*, ___ F.3d ___, 2011 WL 183974, at *6 (7th Cir. Jan. 21,

2011).  As explained by the Seventh Circuit:

> Although the Supreme Court's decision in *LaRue* established the fact that a participant in a defined-contribution plan may sue under ERISA section 502(a)(2) for damages to the plan, even if the only place those damages are reflected is in his or her own account, there is much that *LaRue* does not resolve. Importantly, *LaRue* was an individual case, and so it does not answer the question whether, or when, the kind of suit it was addressing may proceed as a class action. In our view, it would be inconsistent with *LaRue* to assume that class actions are impossible in these cases.

___F.3d at ___; 2011 WL 183974, at *15; *accord In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585, 604 n.22 (3d Cir. 2009) (In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held" and "the Supreme Court's recent decision in *LaRue* does not suggest otherwise.").

In the end, defendants have simply not persuaded the court that *LaRue* forecloses certification of the proposed class and the court believes that the Tenth Circuit, if faced with the issue, would follow the lead of the Seventh and Third Circuits by concluding the same.  The court, then, joins the majority of the courts that have addressed certification in analogous cases and concludes that the proposed class satisfies the requirements of Rule 23(b)(1)(B).

B.    *Rule 23(b)(1)(A)*

In the alternative, plaintiffs contend that certification of the proposed class is appropriate

under Rule 23(b)(1)(A).  Because the court has found certification appropriate under Rule 23(b)(1)(B), the court need not reach this issue.  Nonetheless, the court believes a brief discussion of this issue is warranted for the parties' benefit.  Pursuant to Rule 23(b)(1)(A), a class action may be maintained if prosecuting separate actions by individual class members "would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A).  In their motion, plaintiffs assert that certification under this provision of Rule 23(b)(1) is appropriate because, in the absence of certification, defendants will be exposed to "multiple lawsuits and risk inconsistent decisions."

The fact that defendants might be exposed to "inconsistent decisions," as generically argued by plaintiffs, is insufficient to support certification under Rule 23(b)(1)(A).  As the Tenth Circuit has recognized, one "limitation on (b)(1)(A) certification requires that there be 'more than the mere possibility that inconsistent judgments and resolutions of identical questions of law would result if numerous actions are conducted instead of one class action.'" *In re Integra Realty Resources, Inc*., 354 F.3d 1246, 1263-64 (10th Cir. 2004) (quoting *Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc*., 158 F. R.D. 681, 687 (D. Kan. 1994)).  In the case cited with approval by the Circuit, *Midland Bancor*, the district court emphasized that the fact that the defendant might "win some and lose others" if faced with separate suits does not mean that certification is appropriate under Rule 23(b)(1)(A).  158 F.R.D. at 687.  Rather, the risk of "incompatible standards of conduct" which the Rule "was designed to protect against involves situations where the [defendant] does not know, because of inconsistent adjudications, whether

23

or not it is legally permissible for it to pursue a certain course of conduct." *Id.* (citations and quotations omitted). In other words, certification under Rule 23(b)(1)(A) is appropriate only where the defendant "could be sued for different and incompatible affirmative relief." *Id.*; *accord In re Integra*, 354 F.3d at 1264 (certification under Rule 23(b)(1)(A) appropriate where the defendant could be required to fulfill mutually conflicting obligations).

In light of these principles, several courts in analogous contexts have held that certification under Rule 23(b)(1)(A) is not appropriate where the proposed class was seeking solely or primarily money damages. *See Hochstadt*, 708 F. Supp. 2d at 104 n.11 (finding certification inappropriate under Rule 23(b)(1)(A) in § 502(a)(2) context because plaintiff sought only monetary damages and no "standards of conduct" were implicated by that remedy); *Johnson v. Geico Cas. Co.*, 673 F. Supp. 2d 255, 270 (D. Del. 2009) ("Certification under Rule 23(b)(1)(A) is generally inappropriate where the primary relief sought is monetary damages."); *In re Tyco Int'l, Ltd.*, 2006 WL 2349338, at *3 n.1 (D.N.H. Aug. 15, 2006) (same).

To be sure, plaintiffs highlight several district court cases that, unlike the cases referenced above but in analogous contexts, have certified proposed classes under Rule 23(b)(1)(A). In those cases, however, the district courts identified a specific risk of mutually conflicting obligations–the risk, for example, that one court might order the removal of plan fiduciaries while another court might permit plan fiduciaries to stay. *See Harris*, 271 F.R.D. at 394 ("[T]his Court could enter a ruling to restore Plan assets, remove Plan fiduciaries, or reform Plan investigative practices and monitoring practices that would directly contradict another Court's ruling on the very same issues."); *Nortel Networks*, 2009 WL 3294827, at *15 (if one court

24

ordered the removal of plan fiduciaries but another ordered differently, those orders would establish incompatible standards of conduct); *Jones*, 257 F.R.D. at 193-94 (same); *Merck & Co.*, 2009 WL 331426, at *11 & n.7 ("If one court ordered the removal of a fiduciary, and another court enjoined that fiduciary in a particular way, incompatible standards of conduct would be established.").

Even assuming that certification might nonetheless be appropriate in a case where, as here, the plaintiffs seek primarily monetary damages, plaintiffs have nonetheless not shown that certification would be appropriate here. Plaintiffs have not identified, either in their complaint or in their submissions, any specific relief that they are requesting that might expose defendants to mutually conflicting obligations. They have not suggested that they are seeking the removal of plan fiduciaries or seeking any reformation of any of defendants' practices with respect to the Fund. In the end, then, plaintiffs have simply failed to meet their burden of proving that the requirements of Rule 23(b)(1)(A) have been satisfied.


C.     *Rule 23(b)(2)*

Plaintiffs also contend that certification of the proposed class is appropriate under Rule 23(b)(2). Again, while the court need not address this argument because it has already found certification appropriate under Rule 23(b)(1)(B), the court will nonetheless briefly explain why it would not certify the proposed class under Rule 23(b)(2). Rule 23(b)(2) "provides that class certification is appropriate where 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

declaratory relief is appropriate respecting the class as a whole.'" *Shook v. Board of County Commr's of County of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008) (*Shook II*) (quoting Fed. R. Civ. P. 23(b)(2)). As the Circuit explained in *Shook II*, Rule 23(b)(2) "imposes two independent but related requirements." *Id.* Not only must the defendants' actions or inactions be based on grounds generally applicable to all class members, but final injunctive relief must be appropriate for the class as a whole. *Id.* This second requirement is more restrictive, requiring that the class be "amenable to uniform group remedies." *Id.* (quoting *Shook I*, 386 F.3d at 973). As explained by the Circuit, "Rule 23(b)(2) demands a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude certification." *Id.* Moreover, a class must be sufficiently cohesive "that any classwide injunctive relief can satisfy the limitations of Federal Rule Civil Procedure 65(d)–namely, the requirement that it "state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required." *Id.* (quoting Fed. R. Civ. P. 65(d)(1)).

In their submissions, plaintiffs, in somewhat conclusory fashion, assert that the proposed class "clearly satisfies" the requirements of Rule 23(b)(2). But plaintiffs do not come to grips with the "more restrictive" aspect of Rule 23(b)(2) in any respect. They do not identify any particular injunctive relief with sufficient specificity to enable the court to "see how it might satisfy Rule 65(d)'s constraints and thus conform with Rule 23(b)(2)'s requirement." *Id.* at 605 n.4. They simply refer the court to the prayer for relief in their consolidated complaint, which seeks, among requests for monetary relief, an order "enjoining Defendants . . . from any further violations of their ERISA fiduciary obligations" and "other appropriate equitable and injunctive

relief against the Defendants." These allegations, while perfectly adequate for purposes of notice pleading, simply do not show, as required at the class certification stage, "how final injunctive relief may be crafted to 'describe in reasonable detail the acts required.'" *Id.* at 606 (quoting Fed. R. Civ. P. 65(d)) (alterations omitted). Indeed, the Tenth Circuit has expressly recognized that "injunctions simply requiring the defendants to obey the law are too vague" to satisfy Rule 65 and will not suffice at the class certification stage, *see id.* at 604, and that merely requesting any "appropriate" injunctive relief is not sufficient. *See Monreal v. Potter*, 367 F.3d 1224, 1236 & n.11 (10th Cir. 2004).

Plaintiffs' inability to articulate with the requisite specificity a claim for injunctive relief perhaps stems from the fact that any injunctive relief is clearly subsidiary to plaintiffs' claim for monetary relief. Indeed, while plaintiffs contend that injunctive relief is "an important aspect" of the overall relief sought in this case, they do not dispute that they seek primarily monetary damages. For this reason, too, certification under Rule 23(b)(2) is not appropriate. *See id.* at 1236 (district court did not abuse its discretion in denying certification under Rule 23(b)(2) on grounds that relief sought was primarily monetary damages) (citing *Boughton v. Cotter Corp.*, 65 F.3d 823, 827 (10th Cir. 1995) (same)).

For the foregoing reasons, the court, if faced with the issue, would not certify the proposed class under Rule 23(b)(2).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion for class certification (doc. 102) is **granted.**

27

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiffs Eva L. Hanna, Daniel J. Cambra and Patrick M. Couch are appointed as class representatives.

**IT IS FURTHER ORDERED BY THE COURT THAT** the law firms of Barroway Topaz Kessler Meltzer & Check, LLP and Izard Nobel LLP are appointed as Co-Lead Class Counsel and that the law firm of Dysart Taylor Lay Cotter & McMonigle P.C. is appointed as Liaison Class Counsel for the class.

**IT IS SO ORDERED.**

Dated this 6th day of April, 2011, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge