**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

In Re: YRC Worldwide, Inc.　　　　　　　　　　　　Case No. 09-2593-JWL
ERISA Litigation

**MEMORANDUM & ORDER**

Plaintiffs, former employees of YRC Worldwide, Inc. (YRCW) who participated in the YRC Worldwide, Inc. Retirement Savings Plan (the Plan), bring this class action lawsuit for breach of fiduciary duty under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132. Plaintiffs allege that defendants–including YRCW; the individual members of the Benefits Administrative Committee; and YRCW's Board of Directors–breached their fiduciary obligations with respect to the Plan by continuing to offer as an investment option a fund invested primarily in the Company's own stock, by permitting the Plan to continue to invest contributions in the Company stock fund and by permitting the fund to invest in Company stock when they knew or should have known that the Company stock fund was an imprudent investment for retirement savings.

Plaintiffs also assert claims that are derivative of their prudence claims, including a claim that defendants did not loyally serve Plan participants by taking steps to avoid a conflict of interest such as engaging independent fiduciaries who could independently assess the Plan's investments in the Company stock fund, divesting the Plan of company stock and discontinuing further investments in company stock; a claim that YRCW and the director defendants failed to monitor the performance of the Benefits Administrative Committee members; and a claim for

co-fiduciary liability.

This matter is presently before the court on plaintiffs' motion to strike defendants' affirmative defenses (doc. 145).[1] As will be explained, the motion is granted in part and denied in part.

**Section 404(c) (Affirmative Defense 1)**

For their first affirmative defense, defendants assert that "The claims of Plaintiffs and each member of the putative class are barred, in whole or in part, by ERISA § 404(c), 29 U.S.C. § 1104(c)." Section 404(c) provides a defense to a breach of fiduciary duty claim if the loss caused by the breach resulted from a participant's exercise of control. *See In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585, 603-04 (3d Cir. 2009). The provision states:

> (c) Control over assets by participant or beneficiary
>
> (1)(A) In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his

---

[1] In addition to moving to strike defendants' affirmative defenses, plaintiffs also move to strike a "reservation of rights" paragraph found at the conclusion of defendants' affirmative defenses. Defendants do not address this argument in their opposition to the motion and the court construes that silence as a concession that the paragraph is inappropriate. *See, e.g., Abayneh v. Zuelch*, 2011 WL 572407, at *2 (N.D. Ind. Feb. 14, 2011) (striking alleged affirmative defense that attempted to reserve all rights to raise additional affirmative defenses; defendants not permitted to "get around" scheduling deadlines by reserving all rights to raise affirmative defenses "at any time they deem it convenient"). That paragraph, then, is stricken from defendants' Answer and to the extent defendants wish to pursue an affirmative defense not specifically pleaded, they may seek leave to amend their answer.

2

> account (as determined under regulations of the Secretary)—
>
>> (i) such participant or beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and
>>
>> (ii) no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control, except that this clause shall not apply in connection with such participant or beneficiary for any blackout period during which the ability of such participant or beneficiary to direct the investment of the assets in his or her account is suspended by a plan sponsor or fiduciary.

29 U.S.C. § 1104(c). According to defendants, section 404(c) provides a complete defense to plaintiffs' claims because "any losses were due to participants' own investment decisions."

Plaintiffs move to strike the defense (to the extent it is intended to apply to plaintiffs' prudence claims) on the grounds that the defense is legally insufficient in that a majority of courts have held that the safe harbor of section 404(c) is not available in connection with claims challenging the selection of plan investment options and the decision to continue offering a particular investment. *See Howell v. Motorola, Inc.*, 633 F.3d 552, 568 (7th Cir. 2011) (agreeing with Secretary of Labor's amicus curiae brief that the "selection of plan investment options and the decision to continue offering a particular investment vehicle are acts to which fiduciary duties attach, and that the safe harbor is not available for such acts."); *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 n.3 (4th Cir. 2007) (safe harbor does not apply to a fiduciary's decisions to select and maintain certain investment options within a participant-driven 401(k) plan). As explained by the Seventh Circuit in *Howell*:

> The purpose of section 404(c) is to relieve the fiduciary of responsibility for choices made by someone beyond its control; that is, the participant (or

3

> beneficiary—we mean to include both in this discussion). If an individual account is self-directed, then it would make no sense to blame the fiduciary for the participant's decision to invest 40% of her assets in Fund A and 60% in Fund B, rather than splitting assets somehow among four different funds, emphasizing A rather than B, or taking any other decision. In short, the statute ensures that the fiduciary will not be held responsible for decisions over which it had no control. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (remarking that provisions of ERISA "allocate [ ] liability for plan-related misdeeds in reasonable proportion to respective actors' power to control and prevent the misdeeds"). The language used throughout section 404(c) thus creates a safe harbor only with respect to decisions that the participant can make. The choice of which investments will be presented in the menu that the plan sponsor adopts is not within the participant's power. It is instead a core decision relating to the administration of the plan and the benefits that will be offered to participants.

633 F.3d at 567. As noted by the Seventh Circuit, its conclusion is consistent with the Department of Labor's implementing regulations, which state that "fiduciaries may not be held liable for any loss or fiduciary breach 'that is the direct and necessary result of that participant's or beneficiary's exercise of control.'" *See id.* (quoting 29 C.F.R.§ 2550.404c-1(d)(2)(i)).[2]

In response, defendants attempt to downplay the significance of *Howell* by arguing that the opinion with respect to the applicability of section 404(c) is mere dicta and that, in any event, it extends only to the "selection" of investment options–a specific claim not alleged here because the selection of YRCW stock occurred in the 1970s, long before the class period and well outside the ERISA limitations period. The court rejects both arguments. The Seventh Circuit

---

[2]In a footnote to the preamble to these regulations, the DOL specifically states that the "act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA § 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plan language, is not a direct or necessary result of any participant's direction of such plan." Final Regulations Regarding Particular Directed Individual Account Plans (ERISA § 404(c) plans), 57 Fed.Reg. 46906, 46924-225, n. 27 (General Preamble, n.27).

4

itself has indicated that the section 404(c) analysis in *Howell* was, in fact, not dicta. *See Spano v. The Boeing Co.*, 633 F.3d 574, 590 (7th Cir. 2011) ("In *Hecker*, we left open the question whether a plan could ever be liable for the selection of investment options in a defined-contribution plan. In the related cases we are deciding today, *Howell v. Motorola, Inc.*, we conclude that the answer is yes.") (citations omitted).[3] Moreover, the *Howell* opinion is in no way limited to the "selection" of investment options. The opinion expressly references the decision "to continue offering a particular investment vehicle"–allegations which are clearly encompassed in the Amended Complaint–and the rationale offered by the Seventh Circuit clearly applies to decisions from the initial selection decision to other decisions relating to the investment menu offered under the Plan.

Defendants also contend that *Howell* conflicts with the Third Circuit's decision in *In re Unisys Savings Plan Litigation*, 74 F.3d 420, 445 (3d Cir. 1996) and the Fifth Circuit's decision in *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 309-13 (5th Cir. 2007), such that, at a minimum, the court should not strike the section 404(c) defense at this juncture. The court disagrees. The Third Circuit's decision is not persuasive to the court because the panel, in concluding that a fiduciary may invoke section 404(c) even where it has allegedly selected an inappropriate investment for the plan, expressly did not apply the Department of Labor's regulations implementing section 404(c) because the regulations were not in effect when the transactions at issue in the case occurred. *See* 74 F.3d at 444 n.21; *Langbecker*, 476 F.3d at 322

---

[3]Even if the Seventh Circuit's *Howell* opinion on the safe harbor issue is deemed dicta, it is no less persuasive to this court.

("Unisys and subsequent opinions that rely on it should not be considered controlling, particularly in light of the DOL's consistent contrary interpretation.") (J. Reavley, dissenting); *In re Tyco Int'l Ltd. Multidistrict Litigation*, 606 F. Supp. 2d 166, 168 n.2 (D.N.H. 2009) (noting that *In re Unisys* was "not relevant" to whether section 404(c) applied to prudence claims because that decision did not consider the DOL regulations); *but see Renfor v. Unisys Corp.*, 2010 WL 1688540, at *8 (E.D. Pa. Apr. 26, 2010) (applying the holding of *In re Unisys* and granting defendants section 404(c) protection from claim challenging investment selection decisions because *In re Unisys* was based on the plain language of the statute such that regulations were not entitled to *Chevron* deference in any event).

The court is similarly not persuaded by *Langbecker*, in which a divided panel concluded that a section 404(c) defense applies to a "fiduciary's inclusion of 'bad' stocks into the pot." 476 F.3d at 310-12. In so concluding, the Fifth Circuit declined to give effect to the DOL's interpretation of its own regulations. *See id.* In his dissent, however, Judge Reavley expressed his belief "imprudent designation of an option for participants to choose constitutes grounds for fiduciary liability, and falls outside the scope of participant control envisaged by § 404(c)." *Id.* at 319. According to Judge Reavley, the DOL's interpretation of its regulations was reasonable (including the footnote in the preamble of the regulations) and entitled to *Chevron* deference, particularly as the statute itself expressly delegates to the agency "the task of promulgating regulations governing when a participant will be viewed as having exercised independent control over the assets in his or her account for purposes of § 404(c) relief from fiduciary liability." *Id.* at 320. As explained by Judge Reavley:

6

> Section 404(c) need not be read to shield fiduciaries from liability for including an imprudent investment option on the investment menu in a self-directed plan. By allowing plans to limit their universe of investment choices and still be considered 404(c) plans, the DOL left participants and their beneficiaries at the mercy of the wisdom of whoever made these limiting choices. There should be some assurance that these limited investment choices will be prudently selected. If no duty of prudence attaches to selection of investment options, plan fiduciaries could imprudently select a full menu of unsound investments, among which participants would be free to choose at their peril, while the fiduciaries remain insulated from responsibility. The DOL was within its delegated authority in deciding not to offer relief for the decision to offer a plan investment option.

*Id.* at 320-21. Judge Reavley then highlighted the many district courts and commentators who had all recognized that a plan "fiduciary retains the duty to prudently select and monitor investment options such that § 404(c) does not provide an absolute defense to breach claims." *Id.* at 321-22.

Ultimately, the court believes that the Tenth Circuit, if faced with the issue, would conclude that "although section 404(c) does limit a fiduciary's liability for losses that occur when participants make poor choices from a satisfactory menu of options, it does not insulate a fiduciary from liability for assembling an imprudent menu in the first instance." *DiFelice,* 497 F.3d at 418 n.3. This conclusion is supported by the underlying purpose of section 404(c) as explained by the Seventh Circuit in *Howell* and is appropriate in light of the deference afforded to the DOL's reasonable interpretation of its own regulations. The court, then, strikes defendants' section 404(c) defense to the extent that defense is aimed at plaintiffs' prudence claims.[4]

---

[4]Defendants suggest in their response that the defense applies with full force to plaintiffs' monitoring claims, for example. That issue is not before the court.

7

**Causation Defenses (Affirmative Defenses 4 and 5)**

Plaintiffs move to strike defendants' fourth and fifth affirmative defenses on the grounds that they are not affirmative defenses at all but mere denials of plaintiffs' claims. Defendants' fourth and fifth affirmative defenses state as follows:

> Plaintiffs and each member of the putative class have proximately caused, contributed to, or failed to mitigate any and all losses claimed by them and, as such, Defendants did not cause "any losses to the Plan" under ERISA § 409(a), 29 U.S.C. § 1109(a).
>
> * * * *
>
> Any losses alleged by Plaintiff and each member of the putative class were not caused by any fault, act or omission by Defendants, but were caused by circumstances, entities or persons, including Plaintiff and each member of the putative class, for which Defendants are not responsible and cannot be held liable.

Defendants concede that the issues raised in their fourth and fifth affirmative defenses are not true affirmative defenses because plaintiffs bear the burden of proof on causation. *See United States v. Portillo-Madrid*, 2008 WL 4183915, at *1 n.1 (10th Cir. Sept. 12, 2008) (An affirmative defense is defined as: "A defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true."). Nonetheless, defendants assert that these defenses serve the purpose of providing notice to plaintiffs that defendants intend to assert lack of causation as a means of avoiding liability on plaintiffs' claims.

Courts faced with asserted causation "defenses" in the ERISA context have decided this issue both ways. *Compare Dann v. Lincoln Nat. Corp*., ___ F. Supp. 2d ___, 2011 WL 487207,

8

at *3 (E.D. Pa. Feb. 10, 2011) (denying motion to strike similar causation defenses because such defenses went "to the heart of a requisite element for Dann's claims") *with In re Merck & Co., Inc. Vytorin ERISA Litigation*, 2010 WL 2557564, at *3 & n.3 (D.N.J. June 23, 2010) (granting motion to strike affirmative defense denying causation because assertions were mere denials rather than affirmative defenses, though recognizing that the court could permit the defenses to stand and simply treat the defenses as specific denials). In the end, the court here concludes that it is appropriate to strike these defenses because defendants concede that they are not properly construed as affirmative defenses. However, as the court noted in *Dann*, the practical effect of striking the causation defenses appears to be nonexistent, as even plaintiffs' brief reflects an understanding that defendants will be allowed to obtain appropriate discovery on the issue of causation. *Dann*, ___ F. Supp. 2d at ___; 2011 WL 487207, at *3 n.4 (regardless of whether court struck affirmative defenses, defendants would be allowed to obtain discovery on causation) (citation omitted). These defenses, then, are stricken.[5]

---

[5]The court acknowledges that defendants' fourth affirmative defense utilizes the phrase "failure to mitigate" and that such language is typically viewed as an affirmative defense. The court strikes the defense in its entirety in any event. First, defendants have not mentioned the "failure to mitigate" aspect of their fourth affirmative defense in their papers and, thus, do not suggest that this portion of the defense should survive a motion to strike. Second, it appears that any "failure to mitigate" defense asserted in this action could not be a traditional mitigation-of-damages defense. Because plaintiffs are bringing claims on behalf of the Plan for losses to the Plan (such that plaintiffs' own losses are not at issue), any traditional theory that plaintiffs' failed to mitigate their own losses appears to miss the mark. *See In re State Street Bank & Trust Co. Fixed Income Funds Investment Litigation*, ___ F. Supp. 2d ___, 2011 WL 1105687, at *16-17 (S.D.N.Y. Mar. 28, 2011). Nonetheless, if defendants believe in good faith that they may properly assert a mitigation defense (either in the traditional sense or under some other theory) in the specific context of this case, they may seek leave to amend their Answer.

**Plaintiffs as Fiduciaries (Affirmative Defense 2)**

In their second affirmative defense, defendants assert that "[t]o the extent the defense provided by ERISA § 404(c), 29 U.S.C. § 1104(c) does not apply, Plaintiffs and each member of the putative class acted as fiduciaries when they directed the investment of funds allocated to their account(s) and are therefore liable for any claimed losses." Plaintiffs move to strike this affirmative defense on the grounds that plan participants and beneficiaries, as a matter of law, cannot be deemed fiduciaries when they exercise control over assets in their accounts. In response, defendants categorize this defense as simply another "causation" defense along with affirmative defenses 4 and 5 in the sense that each of these defenses contends that any losses suffered are a result of plan participants' own investment decisions. Defendants, then, do not specifically address the argument made by plaintiffs concerning the second affirmative defense, but rather concede that the "causation defenses" are not truly affirmative defenses but serve the purpose of providing notice to plaintiffs that defendants intend to assert lack of causation as a means of avoiding liability on plaintiffs' claims.

The court, then, declines at this juncture to address the merits of plaintiffs' argument that plan participants and beneficiaries cannot be deemed fiduciaries in the context of this case and simply strikes the second affirmative defense on the grounds that defendants concede that it is not a true affirmative defense. As noted above, the court's decision to strike this defense has no bearing on whether defendants are entitled to pursue discovery on causation issues.

**The Releases Signed by Plaintiffs (Affirmative Defense 3)**

For their third affirmative defense, defendants state that "Plaintiffs' claims are barred by the releases and waivers they signed upon terminating their employment with YRCW or its affiliate." Plaintiffs move to strike this affirmative defense on the grounds that the court has already rejected the defense on the merits. Specifically, in denying defendants' motion for summary judgment, the court concluded that the releases and waivers signed by plaintiffs did not bar plaintiffs' claims in this lawsuit because plaintiffs released only individual claims and thus the releases did not affect the claims asserted here–claims brought on behalf of the Plan. Defendants concede that the court has rejected their argument, but contend that the "interlocutory nature of the summary judgment order, the evolving law in this area, and the lack of prejudice to Plaintiffs" weigh in favor of permitting the defense to stand.

The court disagrees with defendant. The court does not intend to reconsider its summary judgment order sua sponte and while defendants suggest in their February 25, 2011 brief that they "are preparing to file a motion" for reconsideration based on a Seventh Circuit opinion filed earlier this year, no such motion has been filed in the seven weeks since that the filing of defendants' brief. Moreover, in denying defendants' motion for summary judgment on the release issue, the court did not consider disputed facts in the light most favorable to plaintiff such that further discovery might shed additional light on the release issue. Rather, the court concluded as a matter of law, based on the undisputed facts, that the releases simply did not bar plaintiffs' claims in this lawsuit. And defendants do not suggest that further discovery might change the court's outcome on the release issue. Thus, because the court has already squarely addressed and rejected defendants' argument concerning the releases, this affirmative defense

is appropriately stricken. *Prakash v. Pulsent Corp. Employee Long Term Disability Plan*, 2008 WL 3905445, at *2 (N.D. Cal. Aug. 20, 2008) (striking affirmative defense as legally insufficient where court had previously rejected exact argument in ruling on motion to dismiss); *Modern Creative Servs., Inc. v. Dell Inc.*, 2008 WL 305747, at *3-4 (D.N.J. Jan. 28, 2008) (striking affirmative defenses where court had already addressed and rejected same arguments in context of motion to dismiss).

**ERISA and Federal Securities Laws (Affirmative Defenses 6 and 8)**

Defendants' sixth and eighth affirmative defenses concern the relationship between ERISA and the federal securities laws. For their sixth affirmative defense, defendants state that "ERISA § 514(d), 29 U.S.C. § 1144(d), prohibits ERISA from being used to alter, modify, or impair federal securities law or other federal laws." Defendants' eighth affirmative defense states that "Fiduciaries are not required or permitted to violate the securities laws, or any other law, to satisfy their fiduciary obligations." In their motion to strike, plaintiffs urge that these defenses are no longer relevant in light of the court's dismissal of plaintiffs' disclosure claims and, in any event, defendants cannot use the federal securities laws as a shield against ERISA liability and, accordingly, the defenses are legally insufficient. Plaintiffs further contend that the phrase "other federal laws" in the sixth affirmative defense and the phrase "or any other law" in the eighth affirmative defense do not satisfy the requisite pleading standards. Defendants contend that these defenses apply to plaintiffs' prudence claims regardless of whether those claims contain disclosure or misrepresentation allegations and that a fiduciary cannot be required

12

to violate insider trading laws in carrying out his or her duties under ERISA. Defendants do not respond to plaintiffs' arguments concerning the generic references to "other federal laws."

The court has uncovered only one case that has addressed this precise issue. In *Dann v. Lincoln National Corp.*, ___ F. Supp. 2d ___, 2011 WL 487207 (E.D. Pa. Feb. 10, 2011), the plaintiff, a participant in Lincoln National's retirement savings plan, brought a putative class action under ERISA alleging that the defendants breached their fiduciary duties by permitting the Plan to invest in the company's own stock when it was not prudent to do so and by failing to provide plan participants with accurate and complete information. *Id.* at *1. In their Answer, the defendants (represented by the same law firm that represents defendants here) pleaded various defenses, including (verbatim) the sixth and eighth defenses asserted here. *Id.* at *2. The plaintiff (represented by the same counsel who are representing plaintiffs in this action) moved to strike those defenses on the grounds that the federal securities laws "do not relieve fiduciaries of their obligations under ERISA" and that the defenses were therefore legally insufficient. *Id.* at *3. The district judge denied the motion to strike, explaining:

> Dann cites to an inconclusive Third Circuit opinion, as well as to district court cases from outside the Third Circuit. Lincoln points to other cases in other circuits finding to the contrary. Dann's Motion thus requires this court to determine an unclear question of law in the absence of binding circuit precedent. This is clearly beyond the scope of a motion to strike.

*Id.* (citation omitted).

Plaintiffs here direct the court to a Third Circuit case (presumably the same one deemed "inconclusive" by the district judge in *Dann*) in which the Circuit affirmed the district court's 12(b)(6) dismissal of the plaintiff's complaint alleging ERISA violations. *See Edgar v. Avaya,*

13

*Inc.*, 503 F.3d 340 (3d Cir. 2007). In connection with the district court's dismissal of the disclosure claims, the Third Circuit noted:

> In addition, the District Court observed, had defendants decided to divest the Plans of Avaya stock prior to April 19, 2005, based on information that was not publicly available, they would have faced potential liability under the securities laws for insider trading. That observation does not, as Edgar argues, mean that the federal securities laws relieve fiduciaries of their obligations under ERISA.

*Id*. at 350 (citation omitted). The Circuit ultimately concluded that the fact that the defendants "did not inform Plan participants about several adverse corporate developments prior to Avaya's earnings announcement does not constitute a breach of their disclosure obligations under ERISA." *Id*. at 350-51. This case, then, does not stand for the broad proposition asserted by plaintiffs–that a "possible violation of securities laws does not relieve fiduciaries of their obligations under ERISA." That being said, it appears that the majority of district court cases to have analyzed this issue–albeit not in the context of a motion to strike affirmative defenses–have concluded that fiduciaries cannot use the securities laws as a shield to protect against ERISA liability. *See, e.g., Gee v. UnumProvident Corp.*, 2005 WL 534873, at *13-14 (E.D. Tenn. 2005) (collecting cases).

Nonetheless, the court declines to strike the defenses at this juncture (with the exception of the defenses' generic references to "other federal laws," which are simply too conclusory to give plaintiffs fair notice of the basis of the defense, *see Sprint Communications Co. v. Theglobe.com, Inc.*, 233 F.R.D. 615, 618-19 (D. Kan. 2006) in favor of further legal and factual development concerning how these defenses might apply, if at all, in the specific context of this case where plaintiffs have not asserted communication or disclosure claims and, more

14

specifically, the nature, extent and timing of any allegedly "insider information" available to the fiduciaries in this case. In short, because the insufficiency of defendants' sixth and eighth defenses is not "clearly apparent," the court denies plaintiffs' motion to strike without prejudice to refiling at an appropriate time, with the exception that the court will strike the references to "other federal laws" and "any other law." *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1381, at 424-28 (3d ed. 2004) (in the absence of any prejudice to the moving party, courts are "very reluctant" to resolve disputed or substantial issues of law or mixed questions of law and fact and the motion to strike will not be granted if the insufficiency of the defense is not "clearly apparent").

**Affirmative Defense 7**

Finally, plaintiffs move to strike defendants' seventh affirmative defense, which states that "Any fiduciary decisions being challenged are entitled to deference, and are subject to review only for abuse of discretion." According to plaintiffs, this affirmative defense is not a defense at all, let alone an affirmative one–it is merely an evidentiary standard of review. Defendants do not contend otherwise. They simply assert that they are taking a "cautious approach" to notify plaintiffs that defendants intend to argue that any Plan interpretation required by plaintiffs' claims are rightfully first addressed with the Plan administrator and that the administrator's interpretation is entitled to deference. Because defendants concede that their seventh affirmative defense is not appropriately deemed an affirmative defense, the court strikes the seventh affirmative defense. *See United States v. Portillo-Madrid*, 2008 WL 4183915, at *1

n.1 (10th Cir. Sept. 12, 2008) (An affirmative defense is defined as: "A defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true."). This ruling, of course, does not preclude defendants from arguing to the court, if and when appropriate, that deference must be given to the administrator's interpretation of the Plan.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion to strike defendants' affirmative defenses (doc. 145) is **granted in part and denied in part**.

**IT IS SO ORDERED.**

Dated this 15th day of April, 2011, at Kansas City, Kansas.

s/ John W. Lungstrum<br>
John W. Lungstrum<br>
United States District Judge
