# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

IN RE: YRC WORLDWIDE, INC.
ERISA LITIGATION

:
:   Case No. 09-cv-02593 JWL/JPO
:
:

**SETTLEMENT AGREEMENT AND RELEASE**

**TABLE OF CONTENTS**

**Page**

RECITALS .................................................................................................................1

I.       DEFINITIONS. .........................................................................................3

II.      PRELIMINARY APPROVAL . ..............................................................11

III.     INDEPENDENT FIDUCIARY. ............................................................12

IV.      PAYMENTS TO THE SETTLEMENT CLASS. ...................................14

V.       SETTLEMENT ADMINISTRATION. ..................................................18

VI.      RELEASE. ...............................................................................................20

VII.     CASE CONTRIBUTION AWARD. .......................................................21

VIII.    ATTORNEYS' FEES. .............................................................................22

IX.      CONTINGENCIES, EFFECT OF DISAPPROVAL OR TERMINATION OF
         SETTLEMENT. .......................................................................................23

X.       NO ADMISSION OF WRONGDOING. .................................................25

XI.      COVENANTS, REPRESENTATIONS, AND WARRANTIES ...................26

XII.     MISCELLANEOUS. ...............................................................................27

This Settlement Agreement and Release ("Settlement Agreement" or "Agreement")[1] is entered into by and among (i) Plaintiffs Eva L. Hanna, Daniel J. Cambra, and Patrick M. Couch, on their own behalf and on behalf of the Settlement Class (as defined below), (ii) YRC Worldwide, Inc. (defined below as "YRCW"), (iii) the YRCW Benefits Administrative Committee ("BAC"), and (iv) Harold D. Marshall, James G. Kissinger, Daniel J. Churay, Sheila Taylor, Timothy A. Wicks, Phil Gaines, James Staley, Steve Yamasaki, Steve Bruffett, Christina Wise, Paul F. Liljegren, Michael T. Byrnes, Cassandra C. Carr, Dennis E. Foster and Phillip J. Meek, and William D. Zollars (defined below as the "Individual Defendants") (collectively, YRCW, the BAC, and the Individual Defendants are defined below as the "Defendants").

## RECITALS

WHEREAS, on November 17, 2009, Plaintiffs Eva L. Hanna and Shelley F. Whitson instituted *Hanna v. YRC Worldwide, Inc.*, No. 2:09-cv-2593-JWL-JPO (D. Kan.) against YRCW, certain of its officers, as well as persons and entities involved in the administration of, and investment of assets in, the Yellow Roadway Corporation Retirement Savings Plan, the New Penn Motor Express, Inc. 401(k) Retirement Plan, the YRC Regional Transportation, Inc. 401(k) Plan and the YRC Worldwide Inc. 401(k) Plan (defined below as the "Plan" or "Plans"), alleging claims under the Employee Retirement Income Security Act of 1974 ("ERISA");

WHEREAS, thereafter, on December 7, 2009 and January 15, 2010, two additional and substantially identical cases were filed: *Cambra v. YWC Worldwide, Inc.*, s:09-cv-02617-JWL-JPO (D. Kan.) and *Couch v. YRC Worldwide, Inc.*, 2:10-cv-02023-JWL-JPO (D. Kan.);

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in Section I of this Settlement Agreement.

WHEREAS, all of these lawsuits alleged that, for certain periods of time, it was imprudent for the Plans to offer as an investment option a fund that invested primarily in the common stock of YRCW ("YRCW Stock Fund" or "Fund");

WHEREAS, on February 4, 2010, all of the class action lawsuits that had been filed were consolidated into a single class action lawsuit (defined below as the "Action");

WHEREAS, on February 26, 2010, the Court appointed the following law firms to serve as interim co-lead class counsel to represent the putative class: Izard Nobel LLP and Barroway Topaz Kessler Meltzer & Check, LLP (now known as Kessler Topaz Meltzer & Check, LLP (collectively, "Class Counsel" as defined below);

WHEREAS, on April 1, 2010, Plaintiffs filed a Consolidated Class Action Complaint for Violations of the Employee Retirement Income Security Act of 1974 (the "Complaint");

WHEREAS, the Complaint asserts various claims for relief under ERISA against Defendants, all of which claims Defendants have vigorously denied, and continue to vigorously deny;

WHEREAS, on April 21, 2010, an additional and substantially identical case was filed: *Tawana Franklin v. YRC Worldwide, Inc., et al.,* Case No. 10-2232-EFM-DWB (D. Kan.);

WHEREAS, upon consideration of Plaintiffs' Motion to Consolidate Newly Filed Case, the Court consolidated the lawsuit filed by Tawana Franklin with the Action on May 12, 2010;

WHEREAS, Shelley F. Whitson and Tawana Franklin voluntarily dismissed their claims without prejudice and ceased to be Named Plaintiffs;

WHEREAS, on April 6, 2011, the Court certified the Plaintiffs' claims for treatment as a mandatory class pursuant to FED. R. CIV. P. 23(b)(1)(B) and appointed Kessler, Topaz Meltzer &

Check, LLP and Izard Nobel LLP as Co-Lead Class Counsel and appointed Dysart Taylor Lay Cotter & McMonigle P.C. as Liaison Class Counsel;

WHEREAS, Plaintiffs believe that the claims asserted in the Complaint have merit, but despite the alleged strengths of their case, after considering (1) the benefits that Plaintiffs and the Settlement Class will receive from the Settlement and (2) the uncertainties and risk of litigation, Plaintiffs have concluded that the terms and conditions of the Settlement are fair, reasonable, and adequate, and are in the best interests of the Plaintiffs and the Settlement Class;

WHEREAS, the Defendants have denied and continue to deny that they have committed any act or omission giving rise to any liability and/or violation of law, including any violations of ERISA or any other legal obligation or duty, and are entering into this Settlement to eliminate the burden and expense of further litigation and the risk of an adverse judgment were the litigation to proceed;

WHEREAS, entry into this Settlement Agreement is not an admission of liability by any Defendant;

WHEREAS, the Parties wish to promptly and fully resolve and settle with finality the Action;

NOW, THEREFORE, it is agreed, by and among the undersigned, that this Action shall be settled and dismissed with prejudice on the terms and conditions set forth herein, subject to judicial approval.

## I.   DEFINITIONS.

1.1   "Action" shall mean *In re YRC Worldwide, Inc. ERISA Litig.*, No. 2:09-cv-02593-JWL-JPO (D. Kan.).

1.2    "Administration Costs" shall mean (i) the costs and expenses associated with the production and dissemination of the Class Notice, except for costs associated with gathering and providing the names and last known addresses of the Settlement Class, and (ii) any other administrative expenses (including but not limited to Taxes and Tax-Related Costs) necessitated by performance and implementation of this Settlement Agreement and any Court orders relating thereto, except for the cost and expense associated with providing CAFA Notice, which cost shall be borne by Defendants. Administration Costs shall not include Attorneys' Fees or Case Contributions Awards.

1.3    "Agreement Execution Date" shall mean the date on which the final signature is affixed below to execute this Settlement Agreement.

1.4    "Attorneys' Fees/Expenses" shall mean any and all attorneys' fees, costs (including expert costs) and expenses of Plaintiffs' Counsel for their past, present, and future work, efforts, and expenditures in connection with this Action.

1.5    "BAC" shall mean the YRCW Benefits Administrative Committee and its predecessors.

1.6    "CAFA Notice" means notice of this proposed Settlement to the appropriate federal and state officials, as provided by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

1.7    "Case Contribution Award" shall have the meaning ascribed to it in paragraph 7.1.

1.8    "Class Counsel" shall mean the following law firms:  Izard Nobel LLP and Kessler Topaz Meltzer & Check, LLP.

-4-

1.9     "Class Notice" shall mean the notice, identical in all material respects to that attached hereto as Exhibit A, to be provided directly to Settlement Class Members pursuant to paragraph 2.2 and made available on the Settlement Website following the mailing of Class Notice.

1.10    "Court" or "District Court" shall mean the United States District Court for the District of Kansas.

1.11    "Defendants" shall mean YRCW, the BAC, and the Individual Defendants.

1.12    "Defendants' Counsel" shall mean Morgan, Lewis & Bockius, LLP.

1.13    "Distributable Settlement Amount" shall have the meaning ascribed to it in paragraph 4.2(a).

1.14    "DOL" shall mean the United States Department of Labor.

1.15    "Effective Date" shall mean the date upon which the Final Order and Judgment becomes both final and no longer subject to appeal or review (or further appeal or review), whether by exhaustion of any possible appeal, lapse of time, or otherwise.

1.16    "Escrow Account" shall mean an account at an established financial institution agreed upon by the Parties that is established for the deposit of any amounts relating to the Settlement as funded by Defendants within twenty one (21) days of entry of the Preliminary Approval Order.  At all times, the Escrow Account shall be held *in custodia legis*, subject to the approval of the Court.

1.17    "Escrow Agent" shall mean the Settlement Administrator, or whatever other person or entity is selected by Class Counsel with the Defendants' approval, but

such approval not to be unreasonably withheld, to act as escrow agent for any portion of the Settlement Amount deposited in or accruing in the Escrow Account pursuant to this Agreement.

1.18    "Fairness Hearing" shall mean the hearing to be held before the Court pursuant to Federal Rule of Civil Procedure 23(e) to determine whether the Settlement Agreement should receive Final Approval by the Court.

1.19    "Fees and Expenses Motion" shall mean the motion to be filed by Class Counsel seeking approval of an award of Attorneys' Fees/Expenses.

1.20    "Fiduciary Liability Insurers" shall mean the insurers that issued fiduciary liability insurance for the benefit of the Defendants with respect to the Settlement Class Period.

1.21    "Final Approval" shall mean the entry of the Final Order and Judgment.

1.22    "Final Order and Judgment" shall mean a final order entered by the Court after the Fairness Hearing, identical in all material respects to that attached hereto as Exhibit D,  granting its approval of the Settlement.

1.23    "Fund" or the "YRCW Stock Fund" shall mean the Plan's investment option which invested primarily in YRCW common stock during the Class Period.

1.24    "Immediate Family Members" shall mean the parents, children, siblings and spouses of any of the Defendants.

1.25    "Independent Fiduciary" means a person or entity who may, at the election of YRCW within thirty (30) days of the date the Court enters the Preliminary Approval Order, be appointed by the appropriate fiduciary of the Plan or be designated by an

amendment to the applicable governing documents for the Plan to consider whether to approve and authorize in writing this settlement in accordance with DOL Prohibited Transaction Class Exemption 2003-39.

1.26    "Individual Defendants" shall mean Harold D. Marshall, James G. Kissinger, Daniel J. Churay, Sheila Taylor, Timothy A. Wicks, Phil Gaines, James Staley, Steve Yamasaki, Steve Bruffett, Christina Wise, Paul F. Liljegren, Michael T. Byrnes, Cassandra C. Carr, Dennis E. Foster, Phillip J. Meek, and William D. Zollars.

1.27    "Named Plaintiffs" or "Plaintiffs" shall mean Eva L. Hanna, Daniel J. Cambra and Patrick M. Couch.

1.28    "Plan" or "Plans" shall mean the Yellow Roadway Corporation Retirement Savings Plan, the New Penn Motor Express, Inc. 401(k) Retirement Plan, the YRC Regional Transportation, Inc. 401(k) Plan and the YRC Worldwide Inc. 401(k) Plan.

1.29    "Parties" shall mean Plaintiffs and Defendants.

1.30    "Plaintiffs' Counsel" shall mean all attorneys who have appeared on behalf of Plaintiffs in this case, including all attorneys appearing on behalf of Tawana Franklin.

1.31    "Plan of Allocation" shall mean the plan or formula of allocation of the Distributable Settlement Amount as approved by the Court, which plan or formula shall govern the distribution of the Distributable Settlement Amount, in the form attached hereto as Exhibit B.   Notwithstanding any other provision of this Agreement, any revisions by the Court or any appellate court or otherwise relating solely to the Plan of Allocation shall not operate to terminate or cancel or otherwise affect this Agreement.

1.32    "Preliminary Approval Order" shall mean an order entered by the Court preliminarily approving the Settlement pursuant to paragraph 2.1 identical in all material respects to that attached hereto as Exhibit C.

1.33    "Released Claims" shall mean any and all claims, liabilities, demands, causes of action, or lawsuits, known or unknown (including Unknown Claims), of any nature whatsoever, whether legal, statutory, equitable or of any other type or form, whether under federal or state law, and whether brought in a representative or any other capacity, that were or could have been asserted in the Action in connection with, arising out of, related to, or based upon, in whole or in part, directly or indirectly, any action or omission of the Defendants within the Settlement Class Period with respect to inclusion of the Fund as a Plan investment option, investment of Plan assets in the Fund, monitoring of the Fund, or disclosures regarding the Fund.  Released Claims do not include any claims set forth in paragraph 6.3.

1.34    "Released Parties" shall mean (i) YRCW and any and all of its current or former parents, affiliates, subsidiaries, predecessors and successors, as well as any and all of its or their current or former officers, directors, employees, agents, attorneys, insurers, reinsurers, auditors, accountants, committees, fiduciaries, administrators, actuaries, representatives, retained experts and trustees; (ii) the BAC and its predecessors, successors, and current and former members; (iii) the Individual Defendants and any and all of their respective current or former agents, insurers, reinsurers, attorneys, auditors, accountants, successors, assigns, creditors, administrators, heirs, estates and legal representatives; and (iv) the Fiduciary Liability Insurers and any and all of the their

-8-

respective current or former parents, affiliates, subsidiaries, predecessors, officers, directors, employees, agents, attorneys, successors and assigns.

1.35   "Releasors" shall mean the Named Plaintiffs and each Class Member individually and collectively, and subject to Paragraph 3.3 below, the Plan, as well as his, her, or its predecessors, successors, attorneys, partners, heirs, executors, administrators, beneficiaries, representatives, agents, and assigns.

1.36   "Settlement" shall mean the compromise and settlement embodied in this Settlement Agreement.

1.37   "Settlement Administrator" shall mean A.B. Data, Ltd., or such other entity selected by Class Counsel, at their discretion.

1.38   "Settlement Amount" shall mean the total amount of $6,500,000.

1.39   "Settlement Class" or "Settlement Class Member" shall mean:

> All persons, excluding Defendants and their immediate family members, who were participants in or beneficiaries of the Plans, at any time between October 25, 2007 and June 8, 2011 and whose Plan accounts included investments in YRCW common stock (directly and/or through shares in the YRCW Company Stock Fund).

1.40   "Settlement Class Period" shall mean the period from October 25, 2007 to June 8, 2011, the date the Parties reached an agreement in principal to settle this matter.

1.41   "Settlement Website" shall have the meaning ascribed to it in paragraph 2.3.

1.42   "Taxes" shall have the meaning ascribed to it in paragraph 4.1(g).

1.43    "Tax-Related Costs" shall have the meaning ascribed to it in paragraph 4.1(g).

1.44    "Unknown Claims" shall mean any Released Claims which Plaintiffs or any members of the Settlement Class do not know or suspect to exist in their favor at the time of the release of the Released Parties which, if known by them, might have affected their settlement with and release of the Released Parties.   Without admitting that California law in any way applies to this Agreement, with respect to any and all Released Claims, the parties agree that, upon the Effective Date, Plaintiffs and all Settlement Class Members shall be deemed to have, and by operation of the Final Order and Judgment shall have, expressly waived the provisions, rights and benefits of California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiffs and all Settlement Class Members shall be deemed to have, and by operation of the Final Order and Judgment shall have, expressly waived all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542. Plaintiffs and all Settlement Class Members shall be deemed by operation of the Final Order and Judgment to have acknowledged that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

1.45    "YRCW" shall mean YRC Worldwide Inc.

## II.    PRELIMINARY APPROVAL.

2.1    ***Motion for Preliminary Approval****.*  As soon as practicable after execution of this Agreement, Plaintiffs shall move the Court for preliminary approval of the Settlement, including entry of an order identical in all material respects to the form of the Preliminary Approval Order attached as Exhibit C hereto and approval of Class Notice attached as Exhibit A hereto.

2.2    ***Class Notice.***  Pursuant to the Preliminary Approval Order to be entered by the District Court, Class Counsel shall cause the Class Notice to be disseminated to the Settlement Class.  The Class Notice will be sent to the last known mailing address of each Settlement Class Member, which mailing address will be updated through the National Change of Address ("NCOA") database by the Settlement Administrator before mailing (with all returned mail skip-traced and promptly re-mailed).  Defendants shall use their reasonable best efforts in good faith to provide Class Counsel, in electronic format, within thirty (30) days following the Agreement Execution Date, the names and last known addresses of the Settlement Class Members who will receive Class Notice. Defendants or the Plan trustee/record keeper shall confirm the accuracy of such information or data provided.  No charge against the Escrow Account or to Named Plaintiffs, Class Counsel, or the Settlement Class shall be made, directly or indirectly, for costs associated with gathering and providing the names and last known addresses of the Settlement Class as provided in Section 1.2.

2.3    ***Settlement Website.***  No later than the first date that the mailing of the Class Notice occurs, the Settlement Administrator shall establish a settlement website that will contain the Class Notice and this Settlement Agreement and its exhibits (the

-11-

"Settlement Website") and any other materials Class Counsel deems relevant to the Settlement.  The Class Notice will identify the web address of the Settlement Website.

2.4     ***Settlement Information Line.***  No later than the first date that the mailing of the Class Notice occurs, the Settlement Administrator shall establish a case specific toll-free telephone number (the "Settlement Information Line") with an interactive voice response (IVR) system which Settlement Class Members can call to obtain additional information regarding the Settlement and leave messages regarding the Settlement which will be directed to Class Counsel to handle as appropriate.

2.5     ***No Rights of Exclusion.***  Settlement Class Members shall not be permitted to opt out of the Settlement Class.

2.6     ***Right to Object.***  Settlement Class Members shall be permitted to object to the Settlement.  The requirements for filing an objection shall be as set forth in the Preliminary Approval Order.

## III.   INDEPENDENT FIDUCIARY

3.1     Not later than thirty (30) business days after the Court's entry of the Preliminary Approval Order, YRCW or the Plan may retain an Independent Fiduciary to evaluate this Settlement, in which case the Settlement will be contingent upon the Independent Fiduciary:  (i) approving the Settlement and giving a release to the Released Parties in its capacity as a fiduciary of the Plan and for and on behalf of the Plan which is coextensive with the Releases from Named Plaintiffs on behalf of themselves, the Plan and the Settlement Class; (ii) authorizing the Settlement in accordance with Prohibited Transaction Class Exemption 2003-39, and/or finding that the Settlement does not

constitute a prohibited transaction under ERISA Section 406(a).  The Defendants reserve the right to waive, in whole or in part, the conditions set forth in clauses (i) and (ii) of this Section 3.1.

3.2    All Parties shall cooperate in providing such information to the Independent Fiduciary as may be required or requested.

3.3    At least fourteen (14) business days before the Fairness Hearing is held, the Plan, acting by and through the Independent Fiduciary engaged for the specific purpose of reviewing this Settlement Agreement, and the Independent Fiduciary, in its capacity as a fiduciary of the Plan, shall have agreed in writing, in consideration of the terms herein, to grant, upon the Effective Date, releases of the Released Parties, which releases (i) shall release the same claims as the Releases set forth in below; and (ii) shall be determined by the Independent Fiduciary to meet the requirements of the Class Exemption.

3.4    If the Independent Fiduciary fails to timely grant the releases prescribed in Section 6.1, the Settlement shall terminate and become null and void, and the provisions of Section 9.4 shall apply.

3.5    The fees and costs associated with the services of the Independent Fiduciary shall be paid solely by the Defendants.

-13-

## IV.   PAYMENTS TO THE SETTLEMENT CLASS.

4.1   *The Settlement Amount.*

(a)   Defendants shall cause the Settlement Amount to be deposited into the Escrow Account within thirty (30) days of entry of the Preliminary Approval Order.

(i)   The Settlement Amount is to be used solely for the purposes set forth in paragraph 4.1(h) below.

(ii)   Settlement Class Members agree that the Settlement Amount shall not be considered "plan assets," as that term is defined in ERISA and the regulations promulgated pursuant to ERISA, until such time and in such amounts as they are disbursed from the Escrow Account and deposited into the accounts of Settlement Class Members.

(b)   Subject to Court approval and oversight, the Escrow Account will be controlled by the Settlement Administrator.  The Defendants shall have no liability whatsoever for the acts or omissions of the Settlement Administrator.  The Settlement Administrator shall not disburse the Settlement Amount or any portion thereof except as provided for in this Agreement, by an order of the Court, or with prior written agreement of Class Counsel.

(c)   The Settlement Administrator is authorized to execute transactions on behalf of the Settlement Class Members that are consistent with the terms of this Agreement and with orders of the Court.

(d)     All funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until the funds are distributed in accordance with this Settlement Agreement.

(e)     The Settlement Administrator shall, to the extent practicable, invest the Settlement Amount deposited pursuant to paragraph 4.1(a) above in discrete and identifiable instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates.   The Settlement Administrator shall maintain records identifying in detail each instrument in which the Settlement Amount or any portion thereof has been invested, and identifying the precise location (including safe deposit box number) of each such instrument.   Neither the Settlement Amount nor any portion thereof shall be commingled with any other monies in any instruments.   Any cash portion of the Settlement Amount not invested in instruments of the type described in the first sentence of this paragraph shall be maintained by the Settlement Administrator, and not commingled with any other monies, at a bank account, which shall promptly be identified to Defendants' Counsel and Plaintiffs' Counsel (at either party's request) by account number and any other identifying information.   The Settlement Administrator and Settlement Class Members shall bear all risks related to investment of the Settlement Amount.

(f)     The Escrow Account is intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1.   The Settlement

-15-

Administrator, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes owed with respect to the Escrow Account. Defendants or the Fiduciary Liability Insurers agree to provide the Settlement Administrator the statement described in Treasury Regulation §1.468B-3(e). Neither Defendants nor Defendants' Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any taxes with respect to the Escrow Account.

(g)      All (i) taxes on the income of the Escrow Account ("Taxes"), and (ii) expenses and costs incurred in connection with the taxation of the Escrow Account (including, without limitation, expenses of tax attorneys and accountants) ("Tax-Related Costs") shall be timely paid by the Settlement Administrator out of the Escrow Account.

(h)      The Settlement Amount, together with any interest accrued thereon, will be used to pay the following amounts associated with the Settlement:

(i)      Compensation to Settlement Class Members determined in accordance with paragraph 4.2;

(ii)      Any Case Contribution Award (as defined in paragraph 7.1 below) approved by the Court;

(iii)      All Attorneys' Fees/Expenses approved by the Court;

(iv)      All Administration Costs; and

(v)     Taxes and Tax-Related Costs.

4.2    ***Distribution to Settlement Class Members.***

(a)     The money remaining from the Settlement Amount, including any accrued interest thereon, after the payment of any approved Case Contribution Award, approved Attorneys' Fees/Expenses, Administration Costs, and Taxes and Tax-Related Costs, shall be available for distribution to Settlement Class Members (the "Distributable Settlement Amount").

(b)     The Distributable Settlement Amount will be divided among Settlement Class Members in accordance with the Plan of Allocation attached hereto as Exhibit B or such other allocation plan as may be ordered by the Court. The accessible data needed to perform calculations pursuant to the Plan of Allocation shall be provided by Defendants or the Plan trustee/record keeper. Defendants further agree to timely respond to reasonable written requests from Class Counsel for accessible data in YRCW's or the Plan trustee's/record keeper's custody or control necessary to effectuate notice and implement, enforce or determine the feasibility of a Plan of Allocation (as described and/or provided for herein).    Defendants or the Plan trustee/record keeper shall confirm the accuracy of such information or data provided.    Defendants shall have no responsibility for the Plan of Allocation except for its implementation and shall take no position for or against the Plan of Allocation.    Defendants shall not be held liable with respect to any claim against them for implementing the Plan of Allocation if performed in good faith and non-negligently according to the terms of the Plan of Allocation and the terms as set forth in this Settlement Agreement.

-17-

(c)    The Settlement Administrator shall disburse the Distributable Settlement Amount as promptly as possible after the Effective Date.

4.3    ***Treatment of Undistributed Funds***. As set forth in the Plan of Allocation, Settlement Class Members who withdrew their accounts under the Plan after the beginning of the Settlement Class Period but prior to entry of the Final Order and Judgment, will have an account established for them by the Plan's trustee. Each such Settlement Class Member will be notified of the account along with further instructions from the Plan's trustee, in consultation with the Parties, on how to access his or her account. Any funds that cannot be distributed to Settlement Class Members for whom accounts have been established for purposes of this Settlement shall be distributed in accordance with the Plan's procedures for distributing Plan funds to participants who cannot be located.

4.4    ***Entire Monetary Obligation.*** In no event, and notwithstanding anything else in this Settlement Agreement, shall Defendants be required to pay any amounts other than the Settlement Amount. It is understood and agreed that Defendants' monetary obligations under this Settlement Agreement will be fully discharged by paying the amounts specified in paragraphs 4.1(a) above, and that Defendants shall have no other monetary obligations, or obligations to make any other payments under this Agreement or otherwise, specifically including any claim for costs and Attorneys' Fees incurred by Named Plaintiffs or the Settlement Class.

## V.    SETTLEMENT ADMINISTRATION.

5.1    The Settlement Administrator shall administer the Settlement subject to the supervision of Class Counsel and the Court as circumstances may require.

5.2     It is understood and agreed by the Parties that the proposed Plan of Allocation is not part of this Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Agreement or affect the finality of the Court's Final Order and Judgment approving the Settlement or any other orders entered pursuant to the Agreement.

5.3     Defendants and their counsel shall have no responsibility for, interest in, or liability whatsoever with respect to:

(a)     any     act,     omission     or     determination     of     the     Settlement Administrator, Plaintiffs' Counsel or designees or agents of Plaintiffs' Counsel or the Settlement Administrator; or

(b)     any act, omission or determination of Plaintiffs' Counsel or their designees or agents in connection with the administration of the Settlement;

5.4     The Settlement Administrator shall provide to Class Counsel, no less than monthly, a full accounting of all expenditures made in connection with the Settlement, including any distributions from the Settlement Amount.  Defendants' Counsel may obtain a copy of such accounting from Class Counsel upon request.

5.5     The Settlement Administrator shall provide such information as may be reasonably requested by Class Counsel, or by Defendants through Class Counsel, to implement any distribution of funds under this Agreement.

## VI.   RELEASE.

6.1     *Release*.  Upon the Effective Date, Releasors, on behalf of themselves, their predecessors, successors and assigns, shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, and forever released, relinquished and discharged, and shall be forever enjoined from the prosecution of, each and every Released Claim, whether arising before or after the date of the Final Order and Judgment, against any and all of the Released Parties, provided, however, that nothing herein is meant to bar any claim seeking enforcement of this Agreement or court orders relating to it.

6.2     Upon the Effective Date, Defendants shall conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge Named Plaintiffs, the Settlement Class, and Plaintiffs' Counsel from any and all claims relating to the institution or prosecution of the Action or relating to the Settlement of any of the Released Claims.

6.3     Nothing in this Settlement shall release or discharge any claim that (a) has been asserted in the Complaint for Violations of the Federal Securities Laws, filed on February 7, 2011 in *Bryant Holdings LLC, Individually and On behalf of All Others Similarly Situated v. YRC Worldwide Inc., et al.,* No. 11-cv-2072 (D.Kan.) (Docket No. 1) or (b) any subsequently filed action alleging similar violations of the Securities Act of 1933 or the Securities Exchange Act of 1934 during the Settlement Class Period (collectively, (a) and (b) are referred to as "Related Securities Litigation"), provided, however, that nothing herein shall be deemed a waiver by the defendants in the Related Securities Litigation of their rights to maintain that any recovery by the Plan pursuant to

this Settlement Agreement shall offset any recovery in the Securities Litigation.  Further, nothing shall preclude the Plan from filing a claim in the Related Securities Litigation. Additionally, the Plan is deemed not to be an affiliate of any Defendant in the Related Securities Litigation.

## VII.   CASE CONTRIBUTION AWARD.

7.1     Plaintiffs intend to seek a Case Contribution Award not to exceed the amount of $5,000 per plaintiff, which will be subject to Court approval (the "Case Contribution Award").  Defendants will not take any position with respect to any request for a Case Contribution Award up to that amount.   Any Case Contribution Award approved by the Court will be paid within thirty days of the Effective Date.  The Case Contribution Award shall be paid by the Settlement Administrator solely out of the Settlement Amount and shall be deducted (to the extent approved by the Court) from the Settlement Amount on or after the Effective Date and prior to the distribution to the Settlement Class Members.

7.2     Notwithstanding any other provision of this Agreement to the contrary, the procedure for and the allowance or disallowance (in whole or in part) by the Court of any application for the Case Contribution Award are to be considered by the Court separately from its consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to the Case Contribution Award, or any appeal of any order relating thereto, shall not operate to terminate or cancel this Agreement or be deemed material thereto.

## VIII.   ATTORNEYS' FEES.

8.1     Class Counsel intends to submit a Fees and Expenses Motion, seeking a fee award based on the value of the Settlement and the work performed by Plaintiffs' Counsel in an amount not to exceed 33% of the Settlement Fund and for reimbursement of expenses.  Defendants agree to take no position on this Motion.  Any amount awarded by the Court in response to such Fees and Expenses Motion shall be paid by the Settlement Administrator solely out of the Settlement Amount and shall be deducted (to the extent approved by the Court) from the Settlement Amount.  Class Counsel may direct payment of any court-approved award of fees and expenses from the Settlement Amount after the date on which the Court enters the Final Order and Judgment and (if separate) an order approving the Fees and Expenses Motion.  In the event that, before the Effective Date, the Settlement is set aside or the award of attorneys' fees and expenses is set aside or modified, Class Counsel shall promptly deposit into the Settlement Fund the attorneys' fees and expenses paid out which has been set aside or modified, plus interest on fees accrued thereon for the period from payment from the Escrow Account to Class Counsel at a rate equal to the rate of interest earned by the Escrow Account during the same period.

8.2     Notwithstanding any other provision of this Agreement to the contrary, the procedure for and the allowance or disallowance (in whole or in part) by the Court of the Fees and Expenses Motion to be paid out of the Settlement Amount are to be considered by the Court separately from its consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to the award of

Attorneys' Fees, or any appeal of any order relating thereto, shall not operate to terminate or cancel this Agreement or be deemed material thereto.

## IX.   CONTINGENCIES, EFFECT OF DISAPPROVAL OR TERMINATION OF SETTLEMENT.

9.1     If the Court or, in the event of an appeal, any appellate court refuses to approve or modifies in a material manner unacceptable to the Parties any aspect of this Agreement, or the proposed Preliminary Approval Order or Final Order and Judgment, the Parties may terminate this Agreement and the Settlement as set forth below.  The Parties agree not to oppose any appeal or petition by either Plaintiffs or Defendants of the Court's decision(s) to have the Settlement, as set forth herein, including but not limited to Class Counsel's request for an award of attorneys' fees, litigation costs, and Case Contribution Awards for the Named Plaintiffs, finally approved.

9.2     This Agreement and the Settlement shall terminate and be cancelled if one of the Parties provides written notification of an election to terminate the Settlement within ten (10) business days after any of the following events:

(a)     The Court declines to provide preliminary approval of this Agreement, or declines to enter or modifies in a material manner unacceptable to any of the Parties the contents of the Preliminary Approval Order attached hereto as Exhibit C;

(b)     The Court declines to provide final approval of this Agreement, or declines to enter or modifies in a material manner unacceptable to any of the Parties the contents of the Final Order and Judgment attached hereto as Exhibit D;

-23-

(c)     The Court's Final Order and Judgment is vacated, reversed or modified in a material manner unacceptable to any of the Parties on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date;

(d)     Pursuant to Section 3.4, the Independent Fiduciary does not approve the settlement as contemplated by DOL Prohibited Transaction Class Exemption 2003-39 or fails to timely grant the releases prescribed in Section 6.1; or

(e)     The Effective Date does not occur for some other reason.

For purposes of this Agreement and this paragraph 9.2, no order of the Court, or modification or reversal on appeal of any order of the Court, solely concerning the Plan of Allocation, the administration of the settlement or the persons performing such administrative functions, or the amount, advancement or award of any Attorneys' Fees and Expenses or Case Contribution Awards shall constitute grounds for cancellation or termination of the Agreement.

9.3     This Agreement and the Settlement shall terminate and be cancelled if (a) any federal or state authorities object to and request material modifications to the Agreement, and (b) within ten (10) business days of receiving any such objection or request, Defendants provide written notice of their election to terminate the Settlement.

9.4     If for any reason this Agreement is terminated or fails to become effective, then:

(a)     The Parties shall be deemed to have reverted to their respective status in the Action as of June 8, 2011 and, except as otherwise expressly

-24-

provided in this Settlement Agreement, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered.

(b)     In addition to this Section IX and its provisions, Section X shall survive any termination of this Settlement.

(c)     The Settlement Amount less Administration Costs paid or incurred shall be returned to Defendants.

## X.     NO ADMISSION OF WRONGDOING.

10.1    Defendants have vigorously denied, and continue to deny, that they committed any violation of ERISA or other laws, and have vigorously denied and continue to deny all allegations of wrongdoing or liability whatsoever with respect to the Released Claims, including any and all claims of wrongdoing or liability alleged or asserted in the Complaint or the Action.  Defendants are agreeing to this Settlement solely because it provides substantial and meaningful benefits to the Settlement Class and will eliminate the substantial burden, expense and uncertainties of further litigation and the concomitant distraction of resources and efforts from its business.  This Agreement, and any of its terms, any agreement or order relating thereto, and any payment or consideration provided for herein, is not and shall not be construed as an admission by Defendants or the Released Parties of any fault, wrongdoing, or liability whatsoever.  This Agreement, and any of its terms, and any agreement or order relating thereto, shall not be offered by any party to be received in evidence in any civil, criminal, administrative, or other proceeding, or utilized in any manner as a presumption, a concession, or an admission of any fault, wrongdoing, or liability on the part of Defendants or any of the Released Parties.  However, nothing contained in this paragraph

shall prevent this Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement (or any agreement or order relating thereto) or the Final Order and Judgment. This Agreement may be filed and used in other proceedings, where relevant, to demonstrate the fact of its existence and of this Settlement, including but not limited to the Released Parties filing the Agreement and/or the Final Order and Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, waiver, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## XI.    COVENANTS, REPRESENTATIONS AND WARRANTIES

11.1    ***Covenants Not to Sue.***  The Named Plaintiffs covenant and agree on their own behalf and on behalf of the Settlement Class and the Plan: (i) not to file against any Released Party any additional claim based or arising from the Released Claims, or refile any of the claims asserted in the Action, and (ii) that the foregoing covenants and agreements shall be a complete defense to any such claims against the Released Parties.

11.2    ***Taxation of Escrow Account.***  The Named Plaintiffs acknowledge on their own behalf and on behalf of the Settlement Class and Plan that the Released Parties have no responsibility for any taxes due on funds once deposited in the Escrow Account or on funds that the Named Plaintiffs, the Settlement Class or Class Counsel receive from the Escrow Account, should any be awarded. Nothing herein shall constitute an admission or representation that any taxes will or will not be due on the Escrow Account.

11.3    ***No Assignment.***   The Named Plaintiffs represent and warrant that they have not assigned or otherwise transferred any interest in any Released Claim against any Released Party, and further covenant that they will not assign or otherwise transfer any interest in any Released Claim.

11.4    ***No Surviving Claims.***   Named Plaintiffs represent and warrant that they shall have no surviving claim or cause of action against the Released Parties with respect to the Released Claims.

## XII.    MISCELLANEOUS.

12.1    ***No Disparaging Statements.***   Plaintiffs and Plaintiffs' Counsel shall make no statements to the press or make any other public statements describing this Settlement that disparage any Party or accuse any Party of wrongdoing.

12.2    ***Duty to Cooperate***.   The Parties promise to cooperate in good faith and to take all actions reasonably necessary to effectuate this Agreement.

12.3    ***Entire Agreement***.   This Agreement is the entire agreement among the Parties and it supersedes any prior agreements, written or oral, including any written settlement offers or emails exchanged between the Parties.   This Settlement Agreement cannot be altered, modified or amended except through a writing executed by all Parties.

12.4    ***Construction of Agreement***.   This Settlement Agreement shall be construed to effectuate the intent of the Parties to resolve all disputes encompassed by the Agreement.   All Parties have participated in the drafting of this Agreement, and any ambiguity should not be resolved by virtue of a presumption in favor of any Party.   The Settlement Agreement was reached at arm's-length by Parties represented by counsel.

12.5   **_Advice of Counsel._**  In entering into this Settlement, the Parties represent that they have relied upon the advice of their attorneys, who are attorneys of their own choice, that they have read the terms of this Settlement and, to the extent necessary, terms were explained to them by their attorneys, and that those terms are fully understood and voluntarily accepted by them.

12.6   **_Executed in Counterparts_**.  This Settlement Agreement may be executed by exchange of executed signature pages by facsimile or Portable Document Format ("PDF") as an electronic mail attachment, and any signature transmitted by facsimile or PDF via electronic mail for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement.  This Settlement Agreement may be executed in several counterparts, each of which shall be deemed to be an original, and all of which, taken together, shall constitute one and the same instrument.

12.7   **_Notices._**   Unless otherwise provided herein, any notice, request, instruction, application for Court approval, or application for Court order sought in connection with the Agreement shall be in writing and delivered personally or sent by certified mail or overnight delivery service, postage pre-paid, with copies by facsimile or e-mail to the attention of Class Counsel or Defendants' Counsel (as well as to any other recipients that a court may specify).  As of the date hereof, the respective representatives are as follows:

> For Defendants:      **Charles C. Jackson**
> Morgan, Lewis & Bockius LLP
> 77 West Wacker Drive
> Chicago, IL 60601
> Telephone: (312) 324-1000
> charles.jackson@morganlewis.com

For the Settlement
Class:

**Wayne T. Boulton**
Izard Nobel LLP
29 South Main Street, Suite 215
West Hartford, CT 06107
Telephone: (860) 493-6292
wboulton@izardnobel.com

**Edward W. Ciolko**
Kessler Topaz Meltzer &
Check, LLP
280 King of Prussia Road,
Radnor, PA 19087
Telephone: (610) 667-7706
eciolko@ktmc.com

12.8    ***Extensions of Time.***   The Parties may agree, subject to the approval of a court where required, to reasonable extensions of time to carry out the provisions of the Agreement.

12.9    ***Further Assurances.***    Each of the *Parties* agrees, without further consideration and as part of effectuating the Settlement, that they will in good faith execute and deliver such other documents and take such other actions as may be reasonably necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

12.10  ***Authority.***   Each person executing this Settlement hereby warrants and represents that he has the full authority to do so on behalf of his respective clients and co-counsel, specifically including each and every Plaintiffs' Counsel.  Each Party further warrants and represents that neither he nor the Parties on whose behalf this Agreement is executed (including any and all co-counsel) has assigned or transferred to any person any Released Claim, in whole or in part, and that he shall defend, indemnify, and hold

-29-

harmless the other Parties from and against any claim based on or in connection with any such assignment or transfer made, or claimed to have been made.

12.11  ***Governing Law.***  This Agreement shall be governed by and construed in accordance with the laws of Kansas without giving effect to any conflict of law provisions that would cause the application of the laws of any jurisdiction other than Kansas.

12.12  ***Expenses.***  Except as otherwise expressly set forth herein, each Party hereto will pay all of its own fees, costs and expenses incurred in connection with the Action, including fees, costs and expenses incident to its or his/her negotiation, preparation or compliance with this Agreement, and including any fees, expenses and disbursements of counsel, accountants, and other advisors.  Nothing in this Agreement shall require Defendants to pay any monies other than as expressly provided herein.

12.13  ***Retention of Jurisdiction***.  The Parties shall request that the Court retain jurisdiction of this matter after the Effective Date and enter such orders as are necessary or appropriate to effectuate the terms of the Agreement.

Agreed to on behalf of Plaintiffs, Plaintiffs' Counsel and the Settlement Class

Dated: October __, 2011          By: _____

                                        Robert A. Izard
                                        Izard Nobel LLP
                                        29 South Main St., Suite 215
                                        West Hartford, CT 06107

                         By: _____

                                          Edward Ciolko
                                        Peter A. Muhic
                                        Mark K. Gyandoh
                                        Kessler Topaz Meltzer & Check, LLP
                                        280 King of Prussia Road
                                        Radnor, PA 19087

Agreed to on behalf of Defendants

Dated: October 31, 2011          By: _____

                                          Christopher Weals
                                        Morgan, Lewis & Bockius, LLP
                                        1111 Pennsylvania Avenue, NW
                                        Washington, DC 20004